# Wytheville.

## SOUTHERN RAILWAY COMPANY v. OLIVER.

### JUNE 16, 1904.

1. TRIAL—*Special Jury—Discretion of Trial Court.*—A motion for a special jury is addressed to the sound discretion of the trial court, and its judgment will not be reversed unless it plainly appears that the discretion has been improperly exercised. A motion for a special jury on account of local prejudices is rightly refused in the absence of proof to sustain it.

2. INSTRUCTIONS—*Evidence to Support.*—In reviewing the evidence in connection with an instruction given or refused, the rule requiring that it shall be considered as on a demurrer to the evidence does not apply. The question is whether there is evidence upon which to rest the instruction, or to which it is referable.

3. RAILROADS—*Collision—Failure to Flag Train—Negligence—Fellow-Servant—Case at Bar.*—A collision by which a yard brakeman was injured having been occasioned by failure to flag a train, and the question being whether the failure to flag was due to the negligence of a fellow-brakeman in the yard, or of the yard conductor, the jury was well warranted, on the evidence in this cause, in finding that the injury was attributable to the negligence of the yard master. Under the circumstances pointed out in the opinion, he ought to have known, by the exercise of reasonable diligence, that the train had not been flagged, even though the fellow-brakeman had been instructed to do so, and had forgotten it.

4. VERDICTS—*Erroneous Instructions—Harmless Error.*—A verdict will not be set aside where an erroneous instruction has been given, when it clearly appears that, upon reading the instructions as a whole, in the light of the evidence, the jury could not have been misled, or when it can be seen from the whole record that even under proper instructions no other verdict could have been rightly found.

5. NEW TRIAL—*Disqualification of Juror—Bias.*—The verdict of a jury in an action for personal injury, against a railroad company, should not be set aside merely because it is afterwards discovered that

one of the jurors had a claim for a personal injury inflicted on him by the same company upon which he intended to sue, in the absence of any evidence that the juror had disregarded his oath as a juror.

6. NEW TRIAL—*Verdicts—Evidence to Support.*—This court will not disturb the verdict of a jury when it cannot say either that the verdict was without evidence, or that the evidence was not sufficient to support it.

7. EXCESSIVE DAMAGES—*Partiality or Prejudice—Personal Injury.*—The verdict of a jury will not be set aside as excessive unless it clearly appears that the jury was actuated by prejudice or partiality. Courts cannot value in money the degrees of pain and anguish of a suffering human being. A verdict of $5,000 for the loss of a foot to a young colored man, such as the plaintiff in this case, cannot be said to be excessive.

Error to a judgment of the Corporation Court of the city of Danville in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case. ·

*Berkley & Harrison,* for the plaintiff in error.

*Cabell & Custer,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

James Oliver, plaintiff in the court below, received injuries while in the service of the Southern Railway Company on its yards in the city° of Danville, Virginia, and brought this action, in the Corporation Court of the said city, to recover damages therefor, and upon the trial judgment was rendered on the verdict of the jury against the defendant company for $5,000.

The circumstances under which the plaintiff was injured are as follows:    There are three tracks of the defendant company

in front of its passenger depot in the city of Danville, and at about 4 o'clock on the morning of March 10, 1903, passenger train No. 11, from Richmond, was standing on the outer track, heading south.    Passenger train No. 34 had just come in from the south and was standing on the middle track, heading north, while No. 39 was standing on the main track next to the depot, heading south.  Just before train No. 39, from the north, arrived in front of the depot, and while passenger train No. 40, from the south, was standing on the main track next to the depot, John Baize, yard flagman, was sent out by John Willard, yard conductor, to flag train No. 34, then overdue and coming from the south, with instructions, as Baize, who was examined as a witness for defendant, swears, to flag No. 34 and come in on it. It was while Baize was out on his instructions from Willard that No. 40 proceeded north, passing No. 39 at North Danville, and the latter train came in and occupied the main track next to the depot.  Baize did flag No. 34, and came in on it to the yard, and was at once, as he testifies, set to work by Willard to aid in taking cars from No. 11 and coupling them to train No. 39.    When Baize returned from flagging train No. 34, Oliver was coupling cars to and under No. 39, under the immediate orders of Willard, the yard conductor.   No. 32 was expected from the south, but trains about that time were running irregularly, and No. 40 had come in to the depot on No. 32's time, and no one seemed to know exactly when No. 32 would be in, as will be seen from the evidence.    While Oliver was under one of the cars of No. 39, train No. 32 rushed swiftly into the depot yard and collided with train No. 39, under which Oliver was engaged, knocked the engine and train of No. 39 back some distance, throwing Oliver down, several car wheels passing over him, and so mashing and mangling his foot and ankle that they had to be amputated below the knee.

Oliver, Baize and John Waddill were all brakemen, members of the yard crew, and Willard was the yard conductor in charge

of these brakemen, and this crew worked under Yard Master Pierce in the day, and his assistant, P. H. Gilliland, at night, the latter being in charge the night of the accident. It was the duty of this crew to make up the trains, taking cars from one train and putting same on to another, coupling hose, etc., and also to flag incoming trains, so as to protect trains standing at the station, when instructed so to do by Willard, the yard conductor, or either of the yard masters. Oliver and Baize were, of course, in the same grade, and worked under the same conductor with exactly the same duties; and the trial of this case proceeded upon the theory throughout, that if the injuries to Oliver were caused by the negligence of Baize, Oliver could not recover, as they were to be regarded as fellow servants; but if the proximate cause of the injuries was the negligence of Yard Conductor Willard, or any other officer or agent of a higher grade of employment with the defendant company than that of Oliver, the fellow-servant doctrine did not apply. The Constitution of Virginia, section 162, Acts 1901-'2, p. 335.

There is no controversy as to its being Willard's duty to control and direct the general and immediate work of Oliver, and also that of Baize, working in the same crew with Oliver.

We are asked to reverse the judgment of the lower court upon the following grounds, viz.: (1) The refusal of the court to order, on the motion of the defendant company, a special jury; (2) The giving of plaintiff's instruction No. 2; (3) The refusal of the court to set aside the verdict because counsel for the defendant company made affidavit that they had heard that Crews, one of the jurors, had been in a collision on the defendant company's road, and intended to make claim, or sue the company; (4) That the verdict was contrary to the law and the evidence; and (5) That the damages awarded by the jury are excessive. The reason urged why a special jury should be allowed was that "a collision had taken place before daybreak between two passenger trains, two men had been killed and several wounded, and much

feeling aroused adverse to the defendant, in addition to the unfortunate prejudice, especially in Danville, against this company."

There is nothing whatever in the record to sustain this contention, or to show that the Corporation Court did not exercise a sound discretion in refusing a special jury. It could not assume, in the absence of any proof to that effect, that the conditions existed that counsel suggested.

In *Atlantic & Danville Rd. Co.* v. *Beake,* 87 Va. 133, 12 S. E. 348, a motion was made for a special jury on the ground that the case was one "involving questions in which a whole magisterial district was interested, and that it would be almost an impossibility to draw from the 'jury box' a jury that would not contain some name or names from that district, and that there was much prejudice in that district against the defendant company." But there being produced no evidence or affidavits to prove the grounds of the motion it was overruled, and this court approved the action of the Circuit Court. The opinion by Lewis, P., in disposing of the question, virtually presented, whether the allowance of a special jury is or is not a matter of right, and after quoting the statute—sec. 3158 of the Code—and remarking that the statute left the question as to whether or not a special jury should be allowed, as at common law, to the discretion of the court—"a discretion, it is true, not arbitrary, but a sound judicial discretion, to be governed by settled principles, and reviewable, when exercised, by the appellate court"—says: "Each case, therefore, must stand on its own circumstances, and where it appears from a survey of the record that injustice has not been done, the judgment of the trial court will not be reversed, although the appellate court may be of opinion that, upon the showing made, a special jury ought to have been allowed. In such a case the error is not to the prejudice of the party complaining." And in *Goodell* v. *Gibbons,* 91 Va. 608, 22 S. E. 504, it is held that a motion for a special jury is addressed to the

sound discretion of the court, and its judgment will not be reversed, unless it plainly appears that the discretion has been improperly exercised.

At the trial the three instructions asked by the defendant company were given, and no objection is urged as to numbers one and three, given at the instance of the plaintiff. The objection made to plaintiff's instruction number two is that it nullified the instructions, numbers one and two, given for the defendant company, and misled the jury. It is as follows:

"The court instructs the jury that if they believe from the evidence that the yard conductor, Willard, was an employee of the defendant company having the right, or charged with the duty to control or direct the general services or the immediate work of the plaintiff, ordered John Baize, a co-employee of the plaintiff, to flag train No. 34 only, and did not order him to flag train No. 32, and that the injury to the plaintiff was caused by the failure to flag No. 32, or if they believe from the evidence that the said Willard ordered the said Baize to flag both trains, Nos. 34 and 32, and that the said Willard knew or could have known by reasonable diligence, that the said Baize had returned without flagging train No. 32, in time to have the said latter train flagged before the collision, they should find for the plaintiff."

The defendant company's instructions, numbers one and two, told the jury that if Baize's neglect caused the accident the plaintiff could not recover, and it is argued that plaintiff's instruction No. 2 holds that Willard was bound to specify and name the trains to be flagged; that when he sent Baize out to flag, to protect the station filled with trains, and told him to look out for No. 34, but did not name No. 32, although Baize knew No. 32 was coming, and although the rules required he should stay out until called in, yet because Willard did not designate the train, and Baize forgot it, that makes Willard and not Baize the faulty party; whereby defendant's instructions were nullified.

Had plaintiff's instruction No. 2 omitted the words *"or could have known by reasonable diligence,"* so that it would have simply read; that if Willard ordered Baize to flag train No. 34 only, and did not order him to flag train No. 32, and that the injury to the plaintiff was caused by the failure to flag No. 32, and that Willard knew that Baize had returned without flagging train No. 32 in time to have had the latter train flagged before the collision, the jury should find for the plaintiff, there could be no doubt, we think, as to the correctness of the instruction. The words *"or could have know by reasonable diligence"* should not have been inserted in the instruction without evidence in the record tending to prove a state of facts or circumstances brought home to Willard sufficient to put him on inquiry as to whether or not train No. 32 had been flagged, and which inquiry, prosecuted with reasonable diligence, would have enabled him to have ascertained the fact that it had not been flagged and in time for him to have had it flagged, and thereby prevented the collision.    In reviewing the evidence in connection with an instruction given or refused, the rule requiring that it shall be considered as upon a demurrer to evidence does not apply.    The question is, whether there is evidence upon which to rest the instruction, or to which it is referable.    In this case, although the jury might have believed that Baize was told to flag No. 32, or that it was his duty to have done so under the rules of the company, yet with these words, "or could have known by reasonable diligence" that he had not done so, that is to say that Willard could have known by reasonable diligence that fact, still they might have been misled by this expression in the instruction even though there was no evidence to justify its insertion therein.    But let us examine the evidence on this point.

Baize, the defendant company's witness, as will be remembered, says he, (Waddill), and the plaintiff made up the yard crew, and worked directly under the orders of Willard, yard conductor, and that Willard was under Pierce, the yard master, in

the day, and his assistant, Gilliland, at night; that it was the duty of the yard conductor and his crew to make up trains, taking cars from one train and putting them on another, and also to flag incoming trains, so as to protect those on the yard, if and when ordered by the yard conductor, and to do only as ordered, and that the yard conductor controls by oral and not written orders. Tunstall, the yard engineer on duty the night of the accident, and who was a witness for the plaintiff, corroborates Baize. Baize further testifies that the defendant company's rules 99 and 100, as to flagging trains, did not apply to the crew of the yard, and that they were governed by oral orders of the yard master, his assistant, or the yard conductor. He was asked the question, whether the yard brakemen flagged by said rules, and his reply is, "We don't flag that way on the yard." He further states that he was told by Willard to go out and flag No. 34, and come in on it; that he carried out the instructions given him by Willard absolutely that night, as he had done before, and as was ordinarily done on the yard, and that both Gilliland and Willard knew that he had gone out to flag No. 34, and had returned upon that train, and that they united in putting him to work on the train No. 39, which plaintiff was coupling up after his (Baize's) return on No. 34. This latter statement is nowhere denied in the record, but is corroborated, we think, as will presently be seen, by Willard. Further, this witness says that there was plenty of time after he came in on No. 34, and after he was seen by Willard and put to work, to have had No. 32 flagged, thus preventing the collision with No. 39; and that he had neither watch nor time-table, and that the officers under whom he worked knew it. True, he says he knew No. 32 was a scheduled train, but he did not know whether it was on time or not, and as a matter of fact it was behind time. It was sought to make the witness say that he forgot No. 32, but he emphatically denies that he did forget it, and insisted that he was not instructed to flag No. 32, and that he·did as he was

instructed. A rule of the company required that Baize and other employees of the defendant company working in the grade that he was, should be instructed in the rules of the company, and be furnished with a time-table, and be required to have a watch, but it clearly appears that he had not been instructed in the rules nor furnished with a time-table, nor had a watch and that the officers of the defendant company under whom he worked knew these facts. Gilliland, called as a witness for the defendant company, testifies that Baize was not to his knowledge instructed in the rules of the company, and that he did not know whether any one performed this duty or not; he could not say whether he had been furnished with a time-table, or had a watch, as the rules of the company required, or not; and while he says that the yard flagmen, have their duties made out just as well as the yard master, he admitted that they go wholly by the instructions as to what they are to do by the yard master and the conductor. He further says that Willard was in charge of the shifting of cars from other trains to train No. 39 on the night of the accident, and that Baize told him that he forgot No. 32 after the accident occurred, but he in no way impairs the statement made by Baize, that he and Willard both knew that Baize had come in on No. 34, and by both told to help in the work at which the plaintiff Oliver was engaged.

Willard, also examined as a witness for the defendant company, admits that he was excited at the time that he sent Baize out to flag, as was usual with him and others on the yard when a number of trains were standing in the yard, and others expected, and he nowhere says that he instructed Baize to flag No. 32; nor does he deny that he saw Baize after he returned on No. 34, and before the collision. On the contrary, he says that he was superintending, or that he was looking after, the shifting being done by Oliver, and it clearly appears that Baize was assisting in doing this work, and that Baize cut the car loose that was being coupled up by the plaintiff. According to the state-

ment of both Gilliland and Willard, the latter was directing the shifting of the cars from other trains to train No. 39, and if this is true the statement of Baize, that these witnesses saw him and directed him to go at this work, must also be true, as Baize was so engaged before the collision, and cut loose the car that plaintiff was coupling on to No. 39 at the time of the collision. Willard knew, as he admits, that "No. 32 was behind, but was expected to arrive in a short time, not over four or five minutes late." So that he must have known that Baize had not flagged No. 32, but had only flagged No. 34, and come in on it. He falls back on the rules of the company, and says Baize should have stayed out until called in by the yard whistle, that is, the whistle of the engine on the yard, but he knew that he had not been so called in, and while he says that Baize told him the first time he met him that he forgot No. 32, meaning the first time he met him after the accident, it was sought to have him say, in effect, that Baize had admitted to him that he was instructed to flag No. 32 and forgot it, but he fails to so testify. This question was propounded to him: "Told you he forgot No. 32, and came in on No. 34?" A. "I don't know about this." And then, on cross-examination, the following questions were propounded to him, and the following answers given:

"Q. Did you not direct Baize to go out and flag No. 34, and say nothing about No. 32?"

"A. No, sir; I told him to go out and flag for me. Watch No. 34; she was close on No. 40."

"Q. What No. 40 do you mean by that?"

"A. No. 34 was right on the block of No. 40."

"Q. Should he have staid out there until blown in?"

"A. Under my instructions he should have done so."

"Q. You told him to go out and flag No. 34 without waiting to be called in?"

"A. Yes, sir."

It thus appears that Baize's statement that the yard flagmen

were controlled by instructions from the yard master or conductor, and not by the printed rules of the company, and also that in giving his instructions to Baize, which were given while No. 40 was standing on the main track, Willard had in mind the protection of No. 40 by having No. 34 flagged. Under these and other circumstances pointed out above, the jury was well warranted in finding that Willard ought to have known by the exercise of reasonable diligence that No. 32 had not been flagged, and this although they might have believed that Baize was instructed to flag both No. 34 and No. 32, and forgot the latter.

We are, therefore, of opinion that plaintiff's instruction No. 2 could not have misled the jury to the prejudice of the defendant company.

But, for another reason, we are of opinion that the judgment of the lower court should not be reversed because of instruction No. 2 given for the plaintiff. When all the instructions are read and construed together in the light of the evidence, it clearly appears, we think, that the jury could not have been misled nor deceived by any of them. When this is the case a judgment should not be reversed, though, as abstract propositions, they may not accurately state the law. *Richmond Granite Co.* v. *Bailey,* 92 Va. 534, 24 S. E. 232; *Russell Creek Coal Co.* v. *Wells,* 96 Va. 416, 31 S. E. 614.

But if it could be said, in the light of the evidence, that instruction No. 2, in the respect discussed, was erroneous, it is well settled that where it can be seen from the whole record that, even under instructions in all respects correct, a different verdict could not have been rightly found, which is the case here as we view it, this court will not reverse it. *Richmond, &c., Ry. Co.* v. *Garthright,* 92 Va. 627, 24 S. E. 267, 32 L. R. A. 220, 53 Am. St. 839.

The next question to be considered is, should the judgment be reversed because the lower court refused to set aside the verdict of the jury on account of the affidavits of counsel, that

they had heard that one of the jurors had been in a collision on the defendant company's road and intended to make claim, or sue the company?

We think not. The affiants do not state as a fact that this juror was making a claim to damage or intended to sue the defendant company, but merely state that they heard after the trial that such was the case.

"A new trial will not be granted on account of the disqualification of a juror for matter that is a principal cause of challenge, which existed before he was elected and sworn as such juror, but which was unknown to the party until after the trial, and which could not have been discovered by the exercise of ordinary diligence, unless it appears from the whole case before the court on motion for a new trial, that the party suffered injustice from the fact that such juror served in the trial of the case." *Reynolds* v. *Richmond & M. Ry. Co.*, 92 Va. 407, 23 S. E. 772, and authorities cited.

But was Crews disqualified as a juror, even if what the affiants heard was a fact? We do not think so. He may have had an honest claim against the defendant company, and yet regarded his oath as a juror, and there is nothing whatever in this record to indicate that he did not.

In *Richardson* v. *Planters Bank*, 94 Va. 130, 26 S. E. 413, Riley, J., in discussing the question, whether the fact that one of the jurors was a debtor to the defendant disqualified him as a juror, says: "If the juror does not stand indifferent to the cause, he is not competent. If he has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice, he is excluded by the law. The last disqualification has been applied in numerous business relations. The partner, or the clerk, or other employee, of either of the parties has been held to be incompetent. But we have been cited to no case that has gone so far as to hold that a debtor of the defendant was incompetent.

VOL. CII—91

To hold, as a legal presumption, that such relationship would be likely to warp the judgment, would be, in our opinion, to estimate too cheaply integrity under the sanction of the law."

We can see no reason why what was said in that case, as to the incompetency of a debtor to the party defendant, does not apply with equal force where the juror, as in this case, might have had a claim against the defendant company.

In considering whether the verdict in this case was contrary to the law and the evidence, we do not deem it necessary to review further the evidence, as we have very fully outlined it in considering the instructions to the jury, and we are of opinion that it very clearly appears thereby that this court could not say, either that the verdict was without evidence, or that the evidence was not sufficient to support it. Nor would we be justified in holding that the damages awarded by the jury are excessive. The suggestion that "the loss of a foot to a negro laborer would not, to a fair-minded jury, suggest a verdict of $5,000," could not of itself have any weight in determining this question. As has been seen, the plaintiff sustained the loss of his foot, amputated between the ankle and the knee, and the evidence shows that he was twenty-four years old when hurt, was in the line of promotion, industrious, strong, and healthy; that he had a wife and two children to support, and contributed largely to the support of a mother and an invalid father; that he was always employed at from $1.00 to $1.50 per day, and was maimed and disabled while in the discharge of his duties under the immediate supervision of his superior as an employee of the defendant company, and without fault upon his part.

It was said by this court, in *Richmond Ry., &c., Co.* v. *Garthwright, supra,* that no method has yet been devised, nor scales adjusted by which to measure or weigh and value in money the degrees of pain and anguish of a suffering human being, nor ever likely to be, and that the verdict of the jury will not be disturbed unless the damages awarded be so great as to neces-

sarily have been the result of prejudice or partiality. It must be clearly shown in the record that the jury was actuated by prejudice or partiality, otherwise, under the well-settled rules of the law, the verdict will not be disturbed. We do not think the record in this case would justify the reversal of the judgment on the ground that the damages awarded the plaintiff are excessive.

It follows, therefore, that the judgment of the Corporation Court of the city of Danville must be affirmed.

*Affirmed.*