# Richmond

HERMAN ROOSEVELT BRAXTON, ETC. v. J. E. FLIPPO.

April 23, 1945.

Record No. 2914.

Present, All the Justices.

The opinion states the case.

*Allen & Allen,* for the plaintiff in error.

*J. M. Turner* and *M. J. Fulton,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

J. E. Flippo, the defendant, lived in South Richmond and sold and delivered firewood there from a motor-driven truck.

Herman Roosevelt Braxton, a colored boy eighteen years old, was employed as helper and worked with him on the 7th and 8th of November, 1943. On the afternoon of Tuesday, the 8th, at five o'clock when the day's work was over, he started home and asked Mr. Flippo to take him first to a point where he might catch a street-car and later to where a friend also worked, who lived near him at his home on Church Hill and who owned an automobile. It was on this trip to the Church Hill friend that trouble developed in the truck's engine, and at Flippo's request Braxton then took over the wheel. Braxton tells us how this came about:

"Q. Don't tell what he said. When you got at the wheel to drive the truck, did you ask Mr. Flippo to let you drive, or did he tell you to get at the wheel?

"A. No, he told me to get at the wheel, you see.

"Q. When you got at the wheel, was the motor running then?

"A. It was running. The motor was running, sir.

"Q. Just before you got at the wheel had Mr. Flippo been driving the truck?

"A. Yes, sir.

"Q. When he got out from under the wheel and got out you got at the wheel, then where did Mr. Flippo get?

"A. He was standing on the running board after I had started the truck off, he was standing on the running board pouring gasoline into something another. What it was I don't know, because I couldn't see over there where the thing was that he was pouring into."

He further said:

"Well, he was pouring gasoline into the carburetor of the

truck, as the truck was running along, you see, and I was driving the truck, you see; driving the truck on along. Well, the time I was driving the truck I never known it was anything to going to happen to the truck or nothing, you see, so it would be any trouble or anything. So, we got up there and then he hollered and told me the truck was on fire. He said, 'Pull over to the side and stop.'

"I pulled over to the side and cut the motor off. And then he said, 'Give me a crocus sack,' and I handed him the bag that I was sitting on. I handed him the bag just as I stepped out the truck, just like that. He had the gasoline and the jar there in his hand, and the bag in this hand and was trying to smother the fire like that, you see, beat it out. So then when I got on the ground, is all I remember, I got a little on the side of him, and he just had the jar and he throwed it right away on me. He throwed the gasoline and all on me, you see, and burned me. And then I was lying down on the ground and trying to put myself out, and he was standing over by the truck * * * The way the jar caught on fire, you see, the way the jar caught on fire he was standing on the running board, you know, pouring gasoline, I reckon into the carburetor, you see, and so the truck made a backfire, and when the truck backfired like that, well, then I seen the blaze then when it blazed, you know, when it came up. I seen the blaze. That is when I got scared. He hollered and told me, said, 'Stop the truck.' And I pulled over to the side, and stopped the truck. I cut the motor off. * * *

"Q. You mean a spark flew back from the carburetor while he was standing on the running board and set it on fire?"

"A. Yes, sir. After I got out of the truck the blaze was burning from the carburetor. Well, he had this here glass jar with this gasoline in it just about full of gasoline, had it in his left hand standing down by the carburetor, and had this here crocus sack bag he had asked me to give him, had it in his right hand beating the fire out, just like that, you see."

This is Flippo's account of how Braxton came to drive:

"A. He said, 'I am going to show you I can drive.' That is what he said to me.

"Q. You didn't tell him to get away from the wheel?

"A. I told *them* to slip over now because I was ready to go. I said, 'Slip over to the middle.' He said, 'I am going to drive; I am going to drive.' I said, 'No.' He said, 'I am going to show you that I can drive.' I said, 'How do I know you can drive?'. He was very persistent to get under the wheel, and I thought probably he would make me a good man and I had to try him out sometime to find whether he could drive."

While on their way engine trouble developed. To remedy it Flippo borrowed a small jar from a wayside neighbor, filled it with gasoline and stood down from his running board that he might pour it directly into the carburetor. This he did but trouble continued, and it was then that he told Braxton to pull over to the side of the road and stop, and that Braxton did. The carburetor had already caught on fire. Flippo, that he might beat it out, asked Braxton, who was at the wheel, to hand him the bag on which he sat. Braxton handed it to him, left his seat, stepped down and stood by Flippo. Flippo says that he never saw Braxton get down, but Braxton says that Flippo was looking right at him and must have seen him. Flippo's effort to beat out the flame failed. Gasoline in the jar caught on fire and without looking he threw it away. This flaming jar struck Braxton and burned him badly. He has sought in a motion for judgment to recover damages for injuries thus suffered—the loss of a leg. A jury returned a verdict for him in the sum of $7,250, which the court, on motion of the defendant, set aside as being without evidence to support it and entered final judgment for Flippo.

When can a trial judge set aside a jury's verdict?

■ It can do so when it is plainly wrong or without evidence to support it. Code, sections 6251 and 6363.

The law on this subject has been so frequently stated and

has been so well settled that it would be futile to reexamine all of our cases which deal with it.

In *Ellett* v. *Carpenter*, 173 Va. 191, 3 S. E. (2d) 370, is this very satisfactory statement:

[2] "A verdict which has been disapproved by the trial judge is not entitled to the same weight on appeal as one that has been approved by him. *DuPont de Nemours & Co.* v. *Taylor*, 124 Va. 750, 766, 98 S. E. 866.

" 'But this does not mean that he can set aside a verdict merely because, if on the jury, he would have found a different verdict. He must be satisfied from the evidence adduced, either that there was no evidence to support the verdict, or that the verdict was plainly contrary to the evidence. This conclusion must be drawn from the whole evidence in the case, but in arriving at his conclusions he has somewhat more latitude than this court would have in passing upon a verdict that was sanctioned by the judgment of the trial court.' *Ricketts* v. *J. G. McCrory Co.*, 138 Va. 548, 560, 121 S. E. 916, 920."

In borderline cases the verdict of a jury should prevail and should not be set aside merely because the judge, had he been a member of the jury, would have favored another verdict.

If the jury accepted Braxton's account of how he came to drive—and they did accept it—Flippo had authority to turn over that duty to him, wherein the case differs from *Taylor* v. *Baltimore, etc., R. Co.*, 108 Va. 817, 62 S. E. 798. Braxton was then neither a guest nor a volunteer.

He was not then a guest for another reason: Flippo said that Braxton was anxious to drive and to demonstrate his ability to drive. "He was very persistent to get under the wheel, and I thought probably he would make me a good man and I had to try him out sometime to find whether he could drive."

According to this account, he was testing out this boy's capabilities as a chauffeur to the end that he might use him permanently in that capacity if he proved to be efficient.

Under either of these accounts there was due to Braxton ordinary care.

■ Flippo knew the explosive qualities of gasoline. He was familiar with motor trucks and must have known that there was danger in pouring it into a hot engine. If an emergency developed, it was self-imposed, and so the doctrine of "error in extremis" has no application. *Wash* v. *Holland*, 166 Va. 45, 183 S. E. 236.

Braxton, when he stepped down, came and stood by Flippo. It was the natural thing for him to do. A jury had a right to believe that he stood by to help. He was burned, not by the flaming engine but by burning gasoline in the jar which Flippo—to protect himself—threw without looking. It struck the plaintiff and set him on fire.

■ In these circumstances, whether or not it was negligence for the defendant to throw upon the plaintiff, without looking, this jar of flaming gasoline, and whether or not it was contributory negligence for the plaintiff to be standing near him, are jury questions; from which it follows that the jury's verdict should be reinstated and final judgment entered.

*Reversed.*