# Richmond

### JIMMY LEE SMITHEY v. SINCLAIR REFINING COMPANY, ET AL.

November 27, 1961.

Record No. 5294.

Present, All the Justices.

*Richard D. Mattox* (*Moody & Mattox*, on brief), for the plaintiff in error.

*Robert M. Furniss, Jr.* (*Taylor, Gustin, Harris & Furniss*, on brief), for the defendants in error.

CARRICO, J., delivered the opinion of the court.

■ Jimmy Lee Smithey, hereinafter referred to as the plaintiff, filed a motion for judgment against Sinclair Refining Company, a corporation, and Frank Carper, hereinafter referred to as the defendants, to recover damages in the sum of $25,000.00 for personal injuries sustained when the automobile operated by the plaintiff was in a collision with the vehicle owned by Sinclair Refining Company and operated by its agent, Frank Carper.

At a jury trial the defendants admitted liability for the plaintiff's injuries, and the case was submitted to the jury on the issue of damages alone. The jury returned a verdict in favor of the plaintiff for $15,-000.00, which the defendants moved to set aside, on the ground that it was excessive.

The trial judge, in a written opinion, held that the verdict was excessive and put the plaintiff on terms to accept an award of $5,000.00 or face a new trial on the issue of damages. The plaintiff accepted the reduced judgment for $5,000.00 under protest, according to the provisions of § 8-350[1], Code of Virginia, 1950, and excepted to the

---

[1] § 8-350. Allowing appeal when verdict reduced and accepted under protest.—In any action at law in which the trial court shall require a plaintiff to remit a part of his recovery, as ascertained by the verdict of a jury, or else submit to a new trial, such plaintiff may remit and accept judgment of the court thereon for the reduced sum under protest, but, notwithstanding such remittitur and acceptance, if under protest, the judgment of the court in requiring him to remit may be reviewed by the Supreme Court of Appeals upon a writ of error awarded the plaintiff as in

court's action in ordering the remittitur of $10,000.00. Plaintiff sought and was granted a writ of error.

The defendants assigned cross-error to the ruling of the trial court, asserting that they were entitled to a new trial as to the full amount of damages. However, the assignment of cross-error was not printed as required by Rule of Court 5:1, § 6(d), was not urged in argument before us, and therefore will not be considered.

The collision in which the plaintiff suffered his injuries occurred on September 3, 1959. The trial was held approximately ten months later, on June 24, 1960. The evidence submitted to the jury concerning plaintiff's injuries was accurately summarized in the trial judge's written opinion as follows:

"The evidence shows that at 7 p.m. on September 3rd the plaintiff, a young man 21 years old, was involved in a headon collision on Victory Boulevard in this city between the car driven by him and a truck driven by Frank Carper, a servant and employee of the Sinclair Refining Company. Immediately after the accident the plaintiff crawled through the window of his automobile and walked to the other vehicle. He stated the impact of the vehicles caused him to have a 'numb feeling.' He then went to the Maryview Hospital where he received emergency treatment. He was charged $3.00 for this service and was told to see his family physician. The next day he saw Dr. W. S. Jennings. X-rays were taken and these were negative as to any broken bones. The doctor found the plaintiff suffering with a 'crushing injury to chest, multiple contusions and lacerations of the left arm, right knee, and a sprain and strain of the thoracic and lumbosacral spine.' The only treatment given was 'strapping and medication to relieve pain and discomfort and relieve spasms of the muscles involved in the injury.' The physician saw the plaintiff only four times, namely, September 4, 5th, 19th and 30th, exclusive of his visit on the day before the trial. All visits were at the doctor's office and the last visit on the day before the trial was to refresh the doctor's memory of the case so that he might intelligently testify; to permit the doctor to re-examine the plaintiff, if necessary, and to inform the doctor of the plaintiff's subjective complaints if there were no lingering objective signs of injury. The doctor's bill for services was $16.00 and the x-ray cost was $40.00. The plaintiff suffered no permanent injuries of any nature or kind (page 26).

other actions at law; and in any such case in which a writ of error is awarded the defendant, the judgment of the court in requiring such remittitur may be the subject of review by the Supreme Court of Appeals, regardless of the amount.

"According to the plaintiff, he was bruised in a rib just below the heart; he suffered from soreness and stiffness for several days; he had a slight injury to the arm that caused him to lose grip in his hand for 'a couple of days,' but this 'went down all right;' he had a little trouble with his chest that lasted 'two or three days,' but 'it got all right' yet some soreness was still there; and he stated that he still has pain in his back. The plaintiff lost only seven days from his work as a helper in a filling station. His wages for this period were $45.00. Since leaving his employment with the service station, he has worked continuously as a bus driver, operating buses eight hours a day. He complains of discomfort after working about six hours. From these complaints the doctor characterized this condition of the plaintiff as a chronic low back strain as distinguished from an acute strain. He found some slight limitation of back motion, but this would not be permanent."

The evidence further discloses that Dr. Jennings, the only physician to treat the plaintiff, instructed the plaintiff to return for further treatment after the visit of September 30th. However, the plaintiff failed to follow the doctor's instructions and did not again seek medical attention until the day before trial, excusing his failure by testifying, "I don't like doctors."

The sole question to be determined is whether the trial judge erred in ruling that the verdict of the jury was excessive, and in requiring the plaintiff to remit $10,000.00 of the verdict as an alternative to the granting of a new trial.

In this Commonwealth we have, by decisions so numerous and so familiar that they require no citation, sought to uphold the sanctity of the jury verdict. It is our duty to sustain a verdict that has been fairly rendered.

In personal injury cases, where the action merely sounds in damages and where there is no rule for measuring such damages, the amount to be awarded is left largely to the discretion of the jury. The verdict of the jury, arrived at upon competent evidence and controlled by proper instructions, in an impartially conducted trial, has always been held to be inviolate against disturbance by the courts. *Farish & Co.* v. *Reigle*, 11 Gratt. (52 Va.) 697, 722; *Ward* v. *White*, 86 Va. 212, 220 9 S. E. 1021, 1024; *E. I. DuPont Co.* v. *Taylor*, 124 Va. 750, 762, 763, 98 S. E. 866, 870; *Dinwiddie* v. *Hamilton*, 201 Va. 348, 352, 353, 111 S. E. 2d 275, 277, 278.

It is not our intention to depart from these salutary rules.

But this is not to say that the verdict of a jury is not subject to the

control of the courts. A healthy administration of justice requires that, in a proper case, the courts must take action to correct what plainly appears to be an unfair verdict. This authority is an ancient and accepted part of the common law. As related to the problem before us, it has been recognized by the legislature in its enactment of Code § 8-224[2], relating specifically to the power of the court to award a new trial where the damages awarded by a jury are either too small or excessive, and Code § 8-350, *supra*, relating to the procedure to be followed in protesting and seeking an appeal from a court's action in ordering a remittitur.

▋ In a case where the verdict of a jury is attacked on the ground that it is excessive, the rules controlling the actions of the court in relation thereto are clear and well defined. If the verdict merely appears to be large and more than the trial judge would have awarded had be been a member of the jury, it ought not to be disturbed, for to do so the judge must then do what he may not legally do, that is, substitute his judgment for that of the jury. *Aronovitch* v. *Ayres,* 169 Va. 308, 328, 193 S. E. 524, 531; *Simmons* v. *Boyd,* 199 Va. 806, 811, 812, 102 S. E. 2d 292, 296.

But if it appears that the verdict is so excessive as to shock the conscience of the court and to create the impression that the jury has been influenced by passion, corruption or prejudice, or has misconceived or misunderstood the facts or the law, or if the award is so out of proportion to the injuries suffered to suggest that it is not the product of a fair and impartial decision, then it becomes the plain duty of the judge, acting within his legal authority, to correct the injustice. *Chesapeake & O. Ry. Co.* v. *Arrington,* 126 Va. 194, 217, 101 S. E. 415, 423, cert. denied 255 U. S. 573, 41 S. Ct. 376, 65 L. ed. 792; *C. D. Kenny Co.* v. *Solomon,* 158 Va. 25, 30, 31, 163 S. E. 97, 98, 99.

▋ Under the law as it now exists, taking into consideration the practice at common law, as supplemented by Code §§ 8-224 and 8-350, in a case where the quantum of damages is the sole issue, if a court determines that a verdict is excessive, it may put the successful party on terms to accept a reduced amount, deemed reasonable to compensate the injured party, as an alternative to awarding a new trial, or it may order a new trial as to the whole amount of damages.

---

[2] § 8-224. Power to grant new trial; how often.—In any civil case or proceeding, the court before which a trial by jury is had, may grant a new trial, unless it be otherwise specially provided. A new trial may be granted as well where the damages awarded are too small as where they are excessive. Not more than two new trials shall be granted to the same party in the same cause on the ground that the verdict is contrary to the evidence, either by the trial court or the appellate court, or both.

The plaintiff contends, however, that in personal injury cases the court is powerless to order a plaintiff to release a part of his verdict or else face a new trial, because there is no standard by which the damages in such cases may be determined.

This contention is without merit.

It is stated in Burk's Peading and Practice, 4th Ed., Sec. 321, pp. 582-585:

"It would seem that in cases where there is no legal measure of damages, as well as in those in which such legal measure exists, where the verdict is plainly excessive the court may put the successful party on terms to release what it regards as excessive, although there is no standard by which the excess can be measured, and, in Virginia, may enter up a final judgment for the reduced amount without any further trial. The court simply exercises its best judgment as to what is right under the circumstances of the case, subject to review for error. But the court cannot act arbitrarily. The assessment of damages is peculiarly the province of the jury, and when the question before the jury is merely as to the quantum of damages to which the plaintiff is entitled, and there is evidence to sustain the verdict, no mere difference of opinion, however decided, can justify an interference with the verdict for that cause. . . ."

In other words, if the verdict is fairly reached, is sustained by the evidence, and there is no standard to measure the damages, it is not then excessive and cannot be disturbed. On the other hand, if the verdict is plainly excessive it necessarily follows that it is not supported by the evidence, and it may be corrected, in the exercise of sound judicial discretion, by putting the prevailing party on terms to accept a reduced amount or else submit to a new trial. *E. I. DuPont Co.* v. *Taylor, supra,* 124 Va. at pp. 763-765; *American Oil Co.* v. *Nicholas,* 156 Va. 1, 12-14, 157 S. E. 754, 758, 759; 13 Mich. Jur., New Trials, § 57, p. 696; 39 Am. Jur., New Trial, § 210, p. 204.

Each case must be judged on its own merits, according to its own peculiar facts and circumstances. What is fair in one case might be entirely inadequate or grossly excessive in another. If the size of the verdict bears no reasonable relation to the damages disclosed by the evidence, it is manifestly unfair. If a standard to measure the damages is lacking, we must depend upon the trial judge to use his sense of justice and fairness, sometimes aided by the "average verdict rule," to correct the unfairness. *Glass* v. *David Pender Grocery Co.,* 174 Va. 196, 201, 202, 5 S. E. 2d 478, 481.

In the case before us, the plaintiff's injury was not of a serious

nature nor was it permanent or disabling in any way; he was never hospitalized except for emergency treatment; he lost only $45.00 in wages; he expended only $59.00 for medical treatment, $40.00 of which was for x-rays; his capacity to earn was not impaired; his pain and suffering was slight, and his only complaint at the time of trial was described by him in this equivocal manner:

"Well, my back hurt me a little bit, and well it hurt me a great deal."

Under these circumstances, although the evidence is devoid of even a suggestion that the jury was actuated by passion, prejudice or corruption, an award of $15,000.00 could only have resulted from a misconception or misunderstanding of the seriousness of the plaintiff's injuries. The size of the verdict, so out of proportion as it is to the plaintiff's injuries and his medical expenses and loss of wages, is sufficient, standing alone, to shock the conscience of the court and to cast upon it the stamp of unfairness.

The law has wisely placed in the hands of the trial judge the power to exercise his sound discretion in supervising the verdicts of juries to prevent miscarriages of justices. The law intends that this power should be exercised, and that the judge should be more than a mere referee between the litigating parties. The ultimate test, in a case of this nature, is whether or not the discretion has been abused.

We cannot say, on the record before us, that there has been any such abuse. This being true, we will not disturb the action of the lower court. It is clearly shown by the record, that before putting the plaintiff on terms to accept the reduced judgment, the trial judge, who had the advantage of seeing the witnesses and hearing them testify, first hand, to what we must now glean from the printed page, was completely familiar with all of the evidence and the incidents of trial.

In what we have said we have not been unmindful of the fact that the jury placed a value of $15,000.00 on the plaintiff's damages, and of the weight such a finding is ordinarily accorded, but in this case the jury's verdict has been disapproved by the trial judge, and such verdict is not, therefore, entitled to the same weight we would have been required to give it if it had been approved by him. *Butler* v. *Darden,* 189 Va. 459, 471, 53 S. E. 2d 146, 151; *Clark* v. *Parker,* 161 Va. 480, 486, 171 S. E. 600, 601.

We are of the opinion that the trial judge did not err in holding the verdict of $15,000.00 to be excessive, and in ordering a remittitur of $10,000.00 thereof, in lieu of the granting of a new trial. His actions are, accordingly,

*Affirmed.*

Spratley, J., dissenting.

I find myself unable to agree with my brethren that the trial court was justified in reducing the verdict of the jury. A more complete statement of the evidence contained in the record shows that Smithey suffered injuries much greater than those summarized by the trial court and accepted by the majority. In addition to the evidence which showed that Smithey suffered "a crushing injury to chest, mutiple contusions, and lacerations of the left arm and right knee, and a sprain and strain of the thoracic and lumbosacral spine," and "spasms of the muscles," his attending physician further testified that:

On June 23, 1960, more than 9 months after the accident a persistent complaint of pain in the lumbosacral joint, objective findings of limitation of motion above that joint, and pain particularly after hours of work, indicated that he had a chronic low back strain instead of an acute strain; that a back brace was prescribed at that time, although he, the physician, had not felt that it was needed on September 30, 1959; that, while of the opinion the injuries were not permanent, he did not know how long Smithey would suffer; that in his opinion, Smithey would not be able to do much physical labor, and manual lifting would aggravate his back condition; and that Smithey was specifically told in September, 1959, that he should not then return to work.

In Webster's Third New International Dictionary, Unabridged, "chronic" is defined as: "marked by long duration, by frequent recurrence over a long time, and often by slowly progressing seriousness."

At the time of the collision, Smithey was an employee at a gas station. His employer, and a brother of his employer, testified that after the accident, he suffered from shortness of breath, could not perform his usual duties of greasing automobiles or lifting tires, had blackout spells; and that he had "slowed down a whole lot."

The wife of Smithey said that after the accident, her husband suffered from vomiting for a short time, and that he was "so restless he could hardly sleep at night, and was still in that condition."

Smithey said that he did not see his physician more often because he did not particularly like doctors; and that, as he told his physician, it was necessary for him "to return to work because he needed to feed his family;" that he had been driving a bus since December 21, 1959; and that after he worked 4 or 5 hours, he had a constant pain in his back "like a sprained ankle."

It has long been the settled rule of this Court, recognized and acted upon in a multitude of cases, "that no method has yet been devised, nor scales adjusted by which to measure or weigh and value in money the degrees of pain and anguish of a suffering human being, nor ever likely to be, and that the verdict of the jury will not be disturbed unless the damages awarded be so great as to necessarily have been the result of prejudice or partiality. It must be clearly shown in the record that the jury was actuated by prejudice or partiality, otherwise, under the well-settled rules of the law, the verdict will not be disturbed." *Southern R. Co.* v. *Oliver*, 102 Va. 710, 722, 723, 47 S. E. 862. *Richmond Ry., etc. Co.* v. *Garthright*, 92 Va. 627, 24 S. E. 267, 32 L. R. A. 220, 53 Am. St. Rep. 839; *Hoffman* v. *Shartle*, 113 Va. 262, 264, 74 S. E. 171; *Aronovitch* v. *Ayres*, 169 Va. 308, 325, 193 S. E. 524; *Braxton* v. *Flippo*, 183 Va. 839, 844, 33 S. E. 2d 757; *Dinwiddie* v. *Hamilton*, 201 Va. 348, 352, 111 S. E. 2d 275.

"In borderline cases the verdict of a jury should prevail and should not be set aside merely because the judge, had he been a member of the jury, would have favord another verdict." *Braxton* v. *Flippo, supra,* 183 Va., at page 844. *Southern Mutual Ins. Co.* v. *Trear*, 29 Gratt. (70 Va.) 255, 261; *Simmons* v. *Boyd*, 199 Va. 806, 811, 812, 102 S. E. 2d 292.

I agree with the majority that "the evidence is devoid of even a suggestion that the jury was actuated by passion, prejudice, or corruption." Nor is there anything in the record to indicate that they misconceived or misunderstood the facts, or the law of the case.

It is fairly apparent from the memorandum opinion of the trial judge that his conclusion was because plaintiff's attorney commented upon the fact that his client was a poor man and that the defendant a big corporation. Plaintiff alleges in his brief that the first reference to the size of the defendant corporation was made by its counsel in his closing argument to the jury, and that this was a justification for the comment of the plaintiff. Moreover, it does not appear from the record that any exception was made to the argument until after the verdict had been rendered and a motion to set aside the verdict was being argued. To render plaintiff's argument sufficient ground for reversal of the judgment, it must have been excepted to and shown to have been prejudicial to the exceptant.

The majority say that it is not their intention to depart from the established rules. In view of the evidence here, there will be considerable difficulty in persuading plaintiff or his counsel that the rules have not been departed from in this case.

I would reverse the judgment of the trial court and reinstate the verdict of the jury.