## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### CHARLES EDWARD CLATTERBUCK V. GEORGE F. MILLER.

December 2, 1974.

Record No. 740013.

Present, All the Justices.

*S. Page Higginbotham (Higginbotham & Puryear, on brief), for plaintiff in error.*

*Atwell W. Somerville (Somerville, Moore & Joyner, on brief), for defendant in error.*

Harrison, J., delivered the opinion of the court.

The issue here is whether the trial court abused its discretion in setting aside as excessive a $40,000 verdict for the appellant.

On April 13, 1971, Charles Edward Clatterbuck allegedly sustained injuries when a vehicle operated by him was struck by another vehicle operated by George F. Miller. On December 15, 1971, Clatterbuck filed his motion for judgment seeking $45,000 damages from Miller for these injuries. Responsive pleadings were filed and on May 30, 1972, the case was tried in the court below. The court ruled that the appellee was liable as a matter of law and submitted the issue of damages to the jury. The jury returned a verdict in favor of appellant in the amount of $40,000. Appellee moved that the verdict be set aside as excessive and for other reasons.

On August 17, 1972, the trial judge advised counsel that:

"I have determined that the Court committed error in determining, as a matter of law, that the defendant was liable for the plaintiff's damages. This issue should have been submitted to the jury and, in any event, the Court should not have taken this action until the defendant concluded his evidence. To do so denies the defendant his 'day in court'. I find also that the verdict was excessive. On these grounds I must sustain the motion of the defendant to set aside the verdict of the jury and order a new trial."

The case was retried on May 8, 1973, before a jury, with the same trial judge presiding, and a verdict was again returned for Clatterbuck but in the reduced amount of $5,000. Appellant moved the court to set aside this verdict and to reinstate the verdict returned by the first jury. The motion was overruled, and final judgment was entered in favor of Clatterbuck for $5,000. We granted appellant a writ of error limited solely to the question of whether the first verdict should have been set aside on the ground that it was excessive.

Clatterbuck was twenty-seven years old at the time of the accident, was unmarried and had been working for three years as a chainman on a highway survey crew. He was an outstanding athlete in high school and continued his interest in athletics after graduation by playing on a local softball team in what is described as a "rough and tumble type" league.

The accident occurred near the Town of Orange on Highway 20. Clatterbuck had stopped behind a motor vehicle making a left turn when he was struck from the rear by Miller. The second jury found negligence on Miller's part, and we do not review its action. Immediately after the impact Clatterbuck drove his vehicle a short distance forward and parked it on the shoulder of the road. Later Clatterbuck drove the vehicle to the home of his girl friend, whom he has since married, and she and her brother accompanied him to the office of Dr. J. D. Middlemas in Orange.

Dr. Middlemas testified that he saw appellant four times, the last occasion being April 26, 1971, and that Clatterbuck told him that he had pain and soreness in his neck and lower back. Dr. Middlemas had x-rays made and prescribed heat, rest and analgesics for the pain. On April 26, although the pain and soreness in appellant's neck had cleared up, Dr. Middlemas thought he had muscle strains and tears and recommended that

Clatterbuck see Dr. Strider, an orthopedist in Charlottesville. Appellant did not go to see Dr. Strider.

Dr. Middlemas said that the x-rays revealed no evidence of fracture or evidence of injury to appellant's back, but did show "a suggestion of spondylolisthesis". He described this as an absence of one of the bony parts of the lower part of the back. He said this defect existed prior to the accident, was something that a small percentage of people are born with, and it apparently had not affected Clatterbuck at all. The doctor also testified that he did not think that trauma could aggravate the condition particularly. His diagnosis of appellant's condition was "traumatic to the back", meaning, he explained, a strain or sprain.

On January 17, 1972, approximately one month after Clatterbuck filed suit, his attorney sent him to see Dr. Donald L. McNay, an orthopedic surgeon with offices in Warrenton, Virginia. Dr. McNay took x-rays and conducted an examination of appellant. He testified that this examination showed no evidence of spinal cord involvement; that Clatterbuck demonstrated some back spasm, splinting and localized tenderness in the lumbar area, or low back, right above the buttocks; that there was no evidence of movement irritation and no muscle wasting in his leg; and that his tendon reflexes were normal. Dr. McNay said: "We are simply dealing with a chronic mechanical problem in the back that has not been relieved to date." He further said that Clatterbuck had a defect in his lumbar spine and that this caused the pain. He described the defect as located at the very last disc of the spine and said that this condition exists in a little over 1% of the population. He also referred to the condition as a "fatigue fracture simply caused by chronic stress. We don't associate it with acute injury, we associate it with simply the mechanics of the back . . . ". He said that the fractures about which he had testified were not caused in the accident.

Dr. McNay admitted that he had depended entirely upon what appellant told him for he found little objective evidence of back injury. The doctor testified that he was not really in a position to state with reasonable medical certainty that Clatterbuck's problems were caused by the accident, but it was his opinion that appellant's condition was so caused. His reasoning was that, while Clatterbuck did have a basic problem prior to the accident,

appellant said it had not given him trouble, and that the trauma of the accident could aggravate appellant's pre-existing condition and bring about the pain and suffering of which Clatterbuck was then complaining. He testified that where a "weak link" exists, it produces instability and any stress upon it to an abnormal degree can cause trouble. He placed appellant's disability at approximately 40% "as far as his spine is concerned".

Appellant's testimony was that prior to the accident he had experienced no trouble with his back or neck but that since then he has been in constant pain; that at times he is unable to drive a car or lift his legs; that while a back brace was helpful for awhile, it afforded him little permanent relief; and that he is required to sleep on a piece of plyboard underneath his mattress or to use an orthopedic mattress. Appellant was advised by Dr. McNay to seek some form of employment that does not involve stress on his back.

Appellee's position is that Clatterbuck sustained a very minor back sprain which cleared up around May 1, 1971. He says that any difficulty experienced by appellant after that time is related to his chronic back defect or to his athletic activities, and not the accident.

Clatterbuck was never hospitalized as a result of the accident. His medical expenses, including x-rays, amounted to approximately $250. He continued his normal activities from the date of the accident to the time of trial. He played softball on a team in the Orange Softball League during the 1971 season and continued his highway employment at the same salary. In addition, he worked part time at a service station. He suffered no diminution of earning capacity and testified that for the year following the accident he "reckoned" he lost a total of five or six days from work. After having been last seen by Dr. Middlemas on April 26th, he neither sought nor received further medical attention for his back during 1971.

The medical testimony is not in serious conflict. Both doctors testified that appellant complained of pain, and both noted a spinal defect that existed prior to the automobile accident. Dr. McNay did not see appellant until nine months following the injury and then only three times for a total of 45 minutes. He also found the basic spinal problem but, being of opinion that trauma *could* aggravate that problem and relying upon the fact that appellant was complaining of pain, concluded that this pain *could* have resulted from the accident.

Appellee argues that assuming Clatterbuck's preexisting spinal condition did become aggravated, the evidence is unclear as to whether this was due to the trauma of the accident, the passage of time (chronic stress) or to appellant's normal activities, including his engaging in athletic sports.

The trial judge had the benefit of personal observation of appellant and his witnesses. He concluded that the verdict was out of proportion to the injuries sustained in the accident. His immediate reaction and comment upon the return of the verdict by the jury was that it was excessive. After reviewing the evidence carefully, and on numerous occasions, he continued of the same opinion. After the second trial, at which the jury returned a verdict for one-eighth of the amount of the first verdict, he reaffirmed his conclusion on the excessiveness of the first verdict.

*Smithey* v. *Refining Co.*, 203 Va. 142, 122 S.E.2d 872 (1961), also involved a back injury and is pertinent to our decision in the instant case. The trial court found a jury verdict of $15,000 to be excessive, reduced it to $5,000, and we approved its action in ordering the remittitur. There, after commenting on the paucity of evidence reflecting a serious injury, the lack of hospitalization, the minimal medical expenses and nonimpairment of Smithey's earning capacity, we said:

"Under these circumstances, although the evidence is devoid of even a suggestion that the jury was actuated by passion, prejudice or corruption, an award of $15,000.00 could only have resulted from a misconception or misunderstanding of the seriousness of the plaintiff's injuries. The size of the verdict, so out of proportion as it is to the plaintiff's injuries and his medical expenses and loss of wages, is sufficient, standing alone, to shock the conscience of the court and to cast upon it the stamp of unfairness.

"The law has wisely placed in the hands of the trial judge the power to exercise his sound discretion in supervising the verdicts of juries to prevent miscarriages of justice. The law intends that this power should be exercised, and that the judge should be more than a mere referee between the litigating parties. The ultimate test, in a case of this nature, is whether or not the discretion has been abused.

"We cannot say, on the record before us, that there has been any such abuse. This being true, we will not disturb the action

of the lower court. It is clearly shown by the record, that before putting the plaintiff on terms to accept the reduced judgment, the trial judge, who had the advantage of seeing the witnesses and hearing them testify, first hand, to what we must now glean from the printed page, was completely familiar with all of the evidence and the incidents of trial.

"In what we have said we have not been unmindful of the fact that the jury placed a value of $15,000.00 on the plaintiff's damages, and of the weight such a finding is ordinarily accorded, but in this case the jury's verdict has been disapproved by the trial judge, and such verdict is not, therefore, entitled to the same weight we would have been required to give it if it had been approved by him. *Butler* v. *Darden*, 189 Va. 459, 471, 53 S.E.2d 146, 151; *Clark* v. *Parker*, 161 Va. 480, 486, 171 S.E. 600, 601." 203 Va. at 148, 122 S.E.2d at 877.

*See also National Cab* v. *Thompson*, 208 Va. 731, 160 S. E. 2d 769 (1968).

Manifestly the General Assembly of Virginia intended, in enacting §§ 8-224 and 8-350, Code of Virginia (1950), that trial judges be empowered in their sound discretion to exercise supervision over the verdicts of juries. In the case under review we cannot ignore what the trial judge has stated and what the record reflects; that is, in the first trial the court "acted too hastily" in rendering summary judgment for the appellant on the issue of negligence before the appellee had concluded his case.[1] The trial judge characterized this action as having denied Miller "his day in court". In *Vaughan* v. *Mayo Milling Co.*, 127 Va. 148, 152-153, 102 S. E. 597, 598 (1920), the court, speaking through Judge Kelly, said:

"Under a sound public policy, the law accords to every litigant one fair and regular trial, but only one. We do not overlook the fact that as a general rule a stronger case must be made in order to justify an appellate court in disturbing an order granting a new trial than where a new trial has been

---

[1] In Clatterbuck's petition for a writ of error is found this paragraph:

"At the conclusion of the testimony of the Plaintiff as to liability, the Court inquired of Plaintiff's Counsel if he wished to renew his motion for summary judgment as to liability; upon being advised in the affirmative, the Court granted the motion to limit the trial to the question of damages."

refused, the reason usually assigned for this rule being that the refusal to grant a new trial operates a final adjudication of the rights of the parties, while the granting of a new trial simply invites further investigation."

We have no way of determining what effect the action of the trial judge in ruling Miller liable as a matter of law and in limiting the trial to the amount of damages had on the jury or the influence such action had on the amount of the verdict. We do know that the immediate reaction of the trial judge, in open court, upon the return of the verdict, was that it appeared to him to be excessive. It is reasonable to conclude that the trial judge would have ordered a remittitur of a portion of the first verdict had he not concluded that the defendant had not been accorded a full, fair and complete trial, and was entitled to a new trial on all issues. He obviously reached the same conclusion here that this court reached in *Green* v. *Ruffin*, 141 Va. 628, 125 S. E. 742 (1924), 127 S. E. 486 (1925). There it was argued that in remanding a case for a new trial the court should direct that the amount of damages be not again submitted to the jury on the further trial of the case but the issue be confined to a finding upon the question of liability of the defendant. While recognizing the authority of this court to so provide, we held:

"Upon consideration of the entire record here and all the circumstances disclosed by it, we thought and still think that the ends of justice do not require that the court should do otherwise than remand the case generally for a trial *de novo*." 141 Va. at 650, 127 S. E. at 486.

The trial judge was familiar with all the evidence and the incidents of trial. It was his considered judgment that the first trial was improperly conducted and that the first verdict was excessive. In the exercise of the discretion vested in him by statute he has disapproved it. While we have limited our review to the question of whether the first verdict was excessive, we are unable to conduct such a review without considering the circumstances of the trial. When we do so we cannot say, in view of the unusual circumstances that surround this case, that the trial court abused its discretion.

*Affirmed.*