## CIRCUIT COURT OF THE CITY OF LYNCHBURG

Ethel B. Wilson

v.

Otis B. Whisnant

March 25, 1980

By JUDGE WILLIAM W. SWEENEY

The only issue is whether a jury award of $40,000 to the plaintiff, Ethel B. Wilson, should be allowed. Counsel have submitted authorities and supplied the Court with a copy of the trial transcript.

The plaintiff and her sixteen year old daughter were injured on December 5, 1977, in the City of Lynchburg, when the car which plaintiff was operating was struck head-on by the defendant's car in plaintiff's lane of travel. The liability of the defendant, Whisnant, was clear. Punitive damages were not sought.

On October 31, 1979, both cases were tried before a jury on an admission of liability by the defendant. Ethel Wilson was awarded $28,500 and her daughter was awarded $6,500 as compensatory damages. These verdicts were set aside by this Court and new trials were awarded on grounds that the verdicts were excessive and that defendant had never been properly served with process. The second ground, while not stated in the Court's letter to counsel, in this Court's opinion would have required that the verdicts be set aside in any event.

After non-suits and refilings, the cases were reset and tried again on February 19, 1980. This time, the defendant chose not to admit liability and all facts of the accident were presented to the jury. No doctor testified either time. The evidence was substantially but not entirely

the same at both trials. At the second trial, the jury awarded the mother $40,000 and the daughter $7,500 with interest from the date of the accident. The Court entered judgment on the $7,500 verdict and took the $40,000 verdict under advisement on the issue of excessiveness.

A review of the transcript shows the following as to the extent of Ethel Wilson's injuries. When the witness, David McCoy, saw her at the scene of the accident at about 3:30 p.m., she was disoriented and upset and was asking about her daughter. She was bleeding (Tr. 10, 11). The investigating officer said she had already been loaded in the ambulance when he arrived (Tr. 23). At the hospital, Ethel Wilson refused to tell the officer anything about her condition until she was told about her daughter (Tr. 25). The officer saw her the next day. He recalls that she had a neck brace on and had some difficulty moving about (Tr. 25). She told the officer she was in a great deal of pain (Tr. 26).

Mrs. Wilson testified that she lost consciousness after the accident "maybe for a few minutes" (Tr. 34). She was dazed, and her neck, back, and legs were hurting (Tr. 35). At the hospital, the nurses put a strip of adhesive on her head and took x-rays which were negative. Her left shoulder felt numb (Tr. 38, 39). She was not kept overnight at the hospital (Tr. 39). She does not think she wore a neck brace home but one was prescribed at the hospital (Tr. 42). The doctor at the emergency room told her to remain in bed and use hot water bottles or heating pads. He prescribed some pain pills.

She went home, stayed in bed for a week, and took pain pills. She was in pain and on one occasion was "sick all night." She had headaches, a knot on her head, and bruises on her left shoulder, left hip, and lower back (Tr. 41). She saw Dr. Terry Miller, an orthopedic surgeon, at his office on December 12, 1977, December 23, 1977, January 9, 1978, February 14, 1978, and June 5, 1978. At the January visit, he prescribed a back brace and told her to return to work when she felt like it (Tr. 46, 47). On the February visit, the doctor prescribed physical therapy. On one occasion, the plaintiff had to go to the emergency room at night for a shot for muscle spasm. Almost a year later, she went back to Dr. Miller in May 1979, for an evaluation visit before the first trial. She saw

him again in January 1980, for an evaluation visit for the second trial. The doctor prescribed various pain killing drugs and bedrest. The plaintiff experienced some adverse reaction to the drugs (Tr. 79).

Prior to the accident, the plaintiff was employed on a part time basis as a clerk at a local department store. She lost five weeks from work for a total wage loss of $344.50 (Tr. 63) Since returning to work, she has secured a better full time job with the same employer. Her medical expenses were for Dr. Miller x-rays, hospital, physical therapy, ambulance, and drugs. a total of $480.25. According to plaintiff's exhibit P-9, her total out of pocket expense, including lost wages, was $824.75.

Plaintiff did not present any expert medical testimony at trial. She and her husband did testify that she has never recovered from the accident and still experiences pain, stiffness and discomfort (Tr. 108, 109). There was no evidence of any fractures, permanent disability, future medical care or wage dimunition.

Case precedent is of little help in deciding if a particular award is excessive. Each case is different and must be decided on its own particular facts. Courts should not interfere with the size of verdicts in damage cases simply because the judge may feel that the jury awarded too much or too little. However, a judge is not a mere referee at the trial. He must exercise some control over the size of verdicts. The size of the verdict in relation to the evidence is the focal point here. There is no proof that the jury was motivated by passion, corruption or prejudice. However, the size of the verdict alone requires that the trial judge order a new trial or place the plaintiff on terms to accept a lesser amount if the size of the verdict bears no reasonable relation to the damages disclosed by the evidence. A grossly excessive verdict is manifestly unfair. It strongly suggests that the jury "misconceived or misinterpreted the facts or the law." *See Smithey* v. *Refining Co.*, 203 Va. 142, 122 S.E.2d 872 (1961).

The defendant was grossly negligent. The facts of the accident created a natural sympathy for the injured parties. The defendant was not present in court. The facts and circumstances provided no room for jury sympathy for him. The fact that defense counsel elected not to admit

liability in the second trial allowed plaintiff to put all the aggravating facts before the jury. Undoubtedly, this had some effect on the jury even though the Court instructed on damages only. Further, evidence as to the mother's mental anguish for her daughter was introduced without objection. This is not a proper element of damage in the mother's case.

Virginia Code Section 8.01-383 provides that the court may award a new trial where damages are too small or excessive. Not more than two new trials shall be granted on the ground that the verdict is contrary to the evidence. Section 8.01-383.1 recognizes the right of the trial court to require the plaintiff to remit a part of the recovery or submit to a new trial. Remittitur has been approved as discretionary with the trial judge. *See Bassett Furniture* v. *McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976).

In a comprehensive brief, counsel for the plaintiff has reviewed most of the Virginia cases on excessive and inadequate verdicts. He compares the verdicts with the Consumer Price Index (C.P.I.) using the year of decision and 1980. While this is a novel approach, in this Court's opinion, plaintiff has not cited any controlling case on the facts. In *Williams Paving Co.* v. *Kreidl*, 200 Va. 196 (1958), the plaintiff was hospitalized for fifteen days and sustained a broken nose with sinus complications. In *Edmiston* v. *Kupsenel*, 205 Va. 198 (1964), the plaintiff sustained fractures and was unconscious. In *Wagnstrom* v. *Pope*, 207 Va. 761 (1967), the plaintiff was in the hospital eight days. In *Murphy* v. *Freight Lines*, 215 Va. 770 (1975), the plaintiff was hospitalized for twelve days. In all the cases cited, there was expert medical testimony at the trial. One of the few cases where there was no doctor was the case of *Lynchburg Coca Cola* v. *Reynolds*, 215 Va. 1 (1974). There, a $3,000. verdict was set aside as excessive by the Supreme Court and a new trial on damages was awarded.

Not only does the Court question the applicability of the C.P.I. index in a post-trial brief, but there are some questionable conclusions in plaintiff's brief. For instance, the last sentence on page 9 of her brief reads:

Although the doctor was not put on as a witness to give his opinion as to the future extent and duration of her pain and disability, the only logical inference to be drawn from the evidence is that, having existed unabated for more than two years, Mrs. Wilson's pain and disability will continue for a prolonged and indeterminate time in the future if it is not in fact a permanent condition.

Based on the transcript, I cannot accept this conclusion. For the reasons stated, under Virginia Code Section 8.01-383, this Court orders that the jury verdict for Ethel Wilson be set aside as excessive and that a new trial on damages be awarded her.