# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Isaiah Lester,
Administrator
of the Estate of
Jessica Lynn Scott Lester,
deceased

    v.

Allied Concrete Co.
and William Donald Sprouse

### Case No. CL08-150

Isaiah Lester

    v.

Allied Concrete Co.
and William Donald Sprouse

### Case No. CL09-223

BY JUDGE EDWARD L. HOGSHIRE

September 6, 2011

On the 27th day of May 2011, came the parties, Isaiah Lester ("Lester"), Administrator of the Estate of Jessica Lynn Scott Lester, by his counsel, Malcolm P. McConnell, III, Esq., and Defendants Allied Concrete Company ("Allied") and William Donald Sprouse, by their counsel, David M. Tafuri, Esq., Rory E. Adams, Esq., John W. Zunka, Esq., Richard H. Milnor, Esq., and John M. Roche, Esq., and came the beneficiaries, Gary C. Scott and Jeannine Scott, by their counsel, Joseph A. Sanzone, and came Matthew B.

Murray, Esq., by his counsel, Thomas Williamson, Esq., and Marlina Smith, by her counsel, M. Bryan Slaughter, Esq., and Malcolm P. McConnell, III, Esq., by his counsel, Robert T. Hall, Esq., for a hearing upon Defendants' Post-Trial Motions, including Motions for Sanctions against Matthew B. Murray and Isaiah Lester, and Defendants' Post-Trial Motion for Mistrial for Newly Discovered Juror Bias. After careful review of the record in this case, including, but not limited to, deposition, trial and hearing transcripts and accompanying exhibits, legal memoranda, and arguments of counsel, the Court hereby renders the following findings and conclusions.

## I. *Procedural Background*

These civil actions, seeking monetary damages for personal injuries and wrongful death from an accident which occurred on June 21, 2007, were consolidated for trial in this Court by virtue of an Order dated August 3, 2009. Plaintiff Lester alleges that the Defendants, Allied and Sprouse, were negligent in causing an accident which resulted in the death of Jessica Lynn Scott Lester, Lester's wife, and which caused injury to himself. Lester filed suit as Administrator and beneficiary of his wife's estate, as well as on his own behalf, for injuries suffered in the accident of June 21, 2007, and has named as additional statutory beneficiaries the parents of Jessica Scott Lester, Gary C. Scott and Jeannine Scott.

Soon after the cases were consolidated, disputes over discovery-related issues and disagreements between counsel intensified, resulting in the Court's granting Defendants' initial Motion for Continuance. As the second trial date approached, Defendants filed a Second Motion for Continuance, premised in part on Plaintiff's failure to disclose the contents of Lester's Facebook account. In a hearing on March 3, 2009, relating to that motion, Murray accused Tafuri, co-counsel for Defendants, of "hacking" into Lester's Facebook account.

Denying Murray's accusations regarding hacking, Defendants filed a Motion for Sanctions against Murray under Virginia Code § 8.01-271.1 and Rule 4:1(g) of the Rules of the Supreme Court of Virginia.

Asserting that Murray had not complied with certain discovery requests, specifically Request No. 10 of Defendants' Fourth Interrogatory and Requests for Production of Documents, which sought the contents of Lester's Facebook account, Defendants filed a Motion to Compel Plaintiffs to file a complete response.

Following a May 14, 2009, *ore tenus* hearing, the Court entered an Order on June 28, 2010, in which the Court found that "[r]easonable inquiry by Plaintiff's counsel [Murray] would have revealed that there was no reasonable ground for such charges based on the facts available to him," and that such unfounded accusations violated Virginia Code § 8.01-271.1 as well as Rule 4:1(g) of the Rules of the Supreme Court of Virginia.

Murray was ordered to pay reasonable costs and attorneys' fees associated with defending the groundless accusations and prosecuting the motion for sanctions, the total sum to be determined at a later date. This sanction will be heard with respect to costs and fees due along with remaining issues to be resolved at the hearing on September 23, 2011.

Discovery progressed until August 18, 2010, when Defendants filed a Motion for Sanctions for Plaintiff's Spoliation of Evidence, alleging deliberate destruction of evidence which should have been supplied in response to Request No. 10 of Defendants' Fourth Interrogatory and Request for Production of Documents to Plaintiff.

On November 22, 2010, the Court conducted an *ore tenus* hearing on Defendants' Motion for Sanctions for Plaintiff's Spoliation of Evidence. Joshua Scotson, an expert in internet technology retained by Defendants, testified without contradiction that, based upon his review of the Facebook logs and phone records of Lester and paralegal Smith, an employee of the Allen Firm, Lester had deleted sixteen photos from his Facebook page on May 11, 2009. Scotson further attested that he was able to recover fifteen of the deleted photos and that there was a high probability that the sixteenth photo was subsequently provided to defense counsel by the Plaintiff. (All of these photographs were available to the Defendants prior to trial, and Defendants suffered no prejudice from the spoliation at trial.) H'rg Tr. Nov. 22, 2010, at 125-26, 128, 161.

During the hearing on November 22, 2010, Lester, through his counsel Murray, admitted that there had been spoliation of evidence which should have been provided pursuant to the March 25, 2009, discovery request. H'rg Tr. Nov. 22, 2010, at 153:22-154:2. In an Order reflecting the findings from the hearing on November 22, 2010, entered December 6, 2010, while overruling a Defense motion for another continuance of the trial, then set to begin December 7, 2010, the Court found that "there had been spoliation of evidence by the Plaintiff, Isaiah Lester, and that the actions of his counsel and their agents in that spoliation remain the subject of further findings of fact at a future date." The December 6, 2010, Order also provided that an "adverse inference" instruction be given to the jury in relation to the acts of spoliation by the Plaintiff and that Plaintiff and his counsel would remain subject to further findings of fact and possible sanctions at a future date, including the payment of Defendants' fees and costs incurred related to the sanctions motion.

The cases were tried before a jury on December 7-9, 2010. After hearing all the evidence, the jury awarded the sum of $2,350,000, plus interest, to Lester in compensation for his personal injuries, the sum of $6,227,000, plus interest, to Lester as beneficiary of the estate of Jessica Lynn Scott Lester, the sum $1,000,000, plus interest, to Gary C. Scott, as beneficiary of the estate of Jessica Scott Lester, and the sum of $1,000,000, plus interest, to Jeannine Scott, as beneficiary of the estate of Jessica Lynn Scott Lester.

During the week following trial, Plaintiff filed a Notice of Presentation of Final Order, to which Defendants responded with a Motion to Quash Notice of Entry of Final Order and Request to Schedule Post-Trial Motions. Following a hearing on those post-trial motions on December 22, 2010, the Court ordered on February 4, 2011, that entry of the final order on the jury verdict would be deferred and that the Plaintiff must produce all e-mails "previously produced for *in camera* inspection described in Plaintiff's November 29, 2010, privilege log to Defendants" and produce to Defendants all other e-mails or documents previously requested regarding the spoliation of evidence by Plaintiff and his attorneys.

The February 4, 2010, Order also established the schedule for the filing of additional post-trial motions, addressed discovery issues, compelled production of previously subpoenaed documents, and declared that the "attorney-client privilege" and the "work product doctrine" do not apply to any actions or statements by Plaintiff, his counsel, his counsel's legal assistants, or concerning the Defendants' March 25 Request for Production of Documents, the responses to that request for production of documents, any other aspect of Plaintiff's Facebook account, and any and all actions taken relating to spoliation of evidence from the Facebook account or the producing of information in discovery related to the spoliation of evidence from the Facebook account.

On January 18, 2011, Defendants filed a number of motions, including, *inter alia*, a Motion for Monetary Sanctions against Matthew B. Murray, Esq., as Principal to Smith, Motion for Monetary Sanctions against Isaiah Lester, Motion for Monetary Sanctions against Matthew B. Murray, Esq., Motion for Sanctions for Plaintiffs' Counsel's Improper Disclosure of Confidential Mediation Discussions, Defendants' Post-Trial Motions, with Appendix attached, Defendants' Memorandum of Costs and Fees Related to Motion for Sanctions for Plaintiffs' Spoliation of Evidence, and Defendants' Motion for Mistrial for Newly Discovered Juror Bias.

In these post-trial motions, Defendants seek the dismissal of Plaintiffs' claims, or in the alternative, a new trial on liability and damages or a new trial on damages alone, or finally, an order of remittitur.

Defendants assert that such remediation is warranted by virtue of the actions of Plaintiff Lester and his counsel Murray in the spoliation of evidence and the cover-up by counsel of his deceptive behavior, the failure of Murray to disclose the longstanding relationship that he and his firm had with the jury foreperson, Murray's intemperate behavior at trial, including, *inter alia*, his invoking God and prayer as well as crying during open and closing presentations to the jury, his violation of the Court's pre-trial ruling barring mention to the jury that Defendants had originally asserted that Lester was contributorily negligent, Murray's production of "sympathy-inducing" testimony, and Murray's "coaching of a witness." While this argument appears in the January 18, 2011, filings, it was not argued in the

May 27, 2011, hearing, and this Court has received no evidence nor heard argument on the issue. Since this argument has apparently been abandoned by the Defendants, the Court declines to make any finding regarding it.

Defendants assert that Murray, by these actions, "followed a consistent and purposeful strategy of converting a judicial proceeding . . . into a tainted proceeding whereby the jury rendered an excessive verdict based on an incomplete record and motivated by bias and raw emotion." Defs.' Post-Trial Mots., Summ. of Arg., Jan. 18, 2011, at 2

Plaintiff Lester, through attorney McConnell of the Allen Firm, Murray, through his counsel, Mr. and Mrs. Scott, through their counsel, and Smith, through her counsel, then filed responses to these motions.

The Court conducted an *ore tenus* hearing addressing all pending motions on May 27, 2011, in which the Defendants introduced evidence in support of their allegations. McConnell on behalf of Lester presented evidence and argument in defense of the motions, and Murray, through his counsel Thomas Williamson, Esq., presented evidence and argument. Murray testified on his own behalf and admitted that he had committed most of the transgressions alleged by Defendants but denied having instructed Lester to delete the contents of his Facebook page on May 11, 2009. Murray also denied any wrongdoing relating to his role in the selection of the jury. H'rg Tr. May 27, 2010, at 187-223.

At the conclusion of the hearing on May 27, 2011, the Court requested counsel to submit any final arguments in writing to the Court, accompanied by proposed findings of fact and conclusions of law. Subsequent to the hearing, the Allen Firm, through its counsel, Hugh M. Fain, III, Esq., of Spotts Fain, P.C., filed its objection to being held responsible for the actions of Murray during the course of Murray's representation of the Plaintiff in these cases. What follows is the Court's ruling on the issues presented.

## II. *Findings of Fact*

### A. *Preliminary Findings*

Murray, as counsel for Plaintiff and the statutory beneficiaries, along with Joseph Sanzone, Esq., of Sanzone and Baker, P.C., were the lead attorneys in filing and prosecuting these cases. Murray, at all times while acting as lead attorney for the Plaintiff, was the managing principal of the Charlottesville office of the Allen Firm, and all actions taken by him were taken in that capacity. At all times relevant to this action, Smith has been a paralegal employed by the Allen Firm and worked under the direction of Murray.

While there have been accusations of wrongdoing involving paralegal Smith and attorney McConnell, both employed by the Allen Firm, Defendants have not requested that either be sanctioned for their actions

in these cases. Consequently, no findings regarding their behavior will be addressed herein.

## B. *Lester's Deposition Misrepresentations Unrelated to Spoliation*

Lester was clearly evasive and possibly untruthful about his history of depression and his past use of anti-depressants during the discovery phase of these cases. Lester alleged that he suffered from serious Post-Traumatic Stress Disorder and "Major Depressive Disorder, Single Episode, Severe," as a result of the accident. *See Lester v. Allied Concrete Co.*, No. CL09-251, Compl. ¶ 6.

On July 7, 2009, Lester told his psychiatrist, Dr. John P. D. Shemo, during an examination that "he had previously been given a low dose of what he had recalled as being Lexapro while in college by a practitioner whose identity he does not recall." Dr. John P. D. Shemo Dep. 62:1-6, July 30, 2010. In breach of his obligation to cooperate with discovery requests, Lester failed to disclose the details relating to his admitted use of Lexapro. Isaiah Lester Dep. 25-26, Dec. 16, 2009.

Lester also admitted that he was not truthful when he stated, in response to discovery requests that he volunteered at the Boys & Girls Club. App. to Defs.' Post-Trial Mots., Jan. 18, 2011, Ex. A, Oct. 27, 2009, Interrog. Resp. No. 3; Lester Dep. 137:19-24, Dec. 16, 2009.

## C. *Response to Defendants' Fourth Interrogatory and Request for Production of Documents and May 11, 2009, Spoliation of Evidence*

On the afternoon of March 25, 2009, Defendants served Murray by facsimile Defendants' Fourth Interrogatory and Request for Production of Documents to Plaintiff. Matthew B. Murray, Esq., Ex., May 27, 2010, Hr'g Materials, (hereinafter "Murray") May 27, 2011, Ex. 4. This pleading sought discovery relating to the contents of Lester's Facebook account and attached was a photo obtained by Tafuri from Lester's Facebook page. The photo depicts Lester clutching a beer can, wearing a T-shirt emblazoned with "I ♥ hot moms" and in the company of other young adults. Tafuri gained access to Lester's Facebook page via Facebook message on January 9, 2009.

On the evening of March 25, 2009, Murray notified Lester via e-mail about the receipt of the "I ♥ hot moms" photo and the related discovery request. Murray May 27, 2011, Ex. 2.

On the morning of March 26, 2009, Murray met with Smith and brought to her attention Defendants' Fourth Interrogatory and Request for Production of Documents and requested Smith to retrieve what the Defendants were seeking in that request. Smith Dep. 22-23, Feb. 28, 2011. During the course of their discussion, Murray questioned how the Defendants had obtained

314

the "I ♥ hot moms photo." Smith said she thought the photo likely came from Facebook. Smith accessed Lester's Facebook page, and, after seeing the Facebook photo, Murray instructed Smith to tell Lester to "clean up" his Facebook because "we don't want blowups of this stuff at trial." Smith Dep. 15-16, Feb. 28, 2011; Matthew B. Murray Dep. 38-39, Feb. 28, 2011; H'rg Tr. May 27, 2010, at 192-93, 244.

Following Murray's instructions, Smith e-mailed Lester at 9:54 a.m. and 3:49 p.m. on March 26, 2009. The first e-mail requested information from Lester to answer the interrogatory seeking the identities of the individuals in the "I ♥ hot moms" photo. After informing Lester that the "I ♥ hot moms photo" was on his Facebook page, Smith stated there are "some other pics that should be deleted." The second e-mail exhorted Lester to "clean up" his Facebook page because "we do NOT want blow ups of other pics at trial; so please, please clean up your facebook and myspace." Murray May 27, 2011, Ex. 6, 7.

Between March 26 and April 15, 2009, Murray and Smith worked with Lester to respond to Defendants' Fourth Interrogatory and Request for Production of Documents to Plaintiff. Murray May 27, 2011, Ex. 8-13.

On March 26, 2009, Murray began developing a response to Request No. 10, which sought production of "screen print copies on the day this request is signed of all pages from Isaiah Lester's Facebook page, including but not limited to all pictures, his profile, his message board, status updates, and all messages sent or received." Instead of providing what was sought, Murray created a scheme to take down or deactivate Lester's Facebook page and to respond by stating that Lester had no Facebook page as of the date the response was signed. H'rg Tr. May 27, 2010, at 194-95; Murray May 27, 2011, Ex. 6. Murray communicated this plan to Lester who, following the directions of his counsel, deactivated his Facebook page on April 14. Murray May 27, 2011, Ex. 6, 8, 12, 14.

On April 15, 2009, Murray, knowing he was acting deceptively, signed and served upon Defendants Plaintiff's Answer to Defendants' Fourth Interrogatory and Responses to Request for Production of Documents. In this pleading, Murray responded as follows to the Request for Production seeking Facebook screen-prints: "I do not have a Facebook page on the date." This is signed April 15, 2009.

Defense counsel promptly complained to Murray about the Response, threatening to file a motion to compel if screen-prints of the Lester Facebook page "on the day this request is signed" were not produced. Murray May 27, 2011, Ex. 19. When Murray refused, Defendants filed a Motion to Compel Discovery and noticed the Motion for hearing on May 14, 2009.

On April 23, 2009, Murray contacted Melinda South, Esq., a lawyer employed by the Allen Firm as a "research attorney," seeking advice about the Defendants' entitlement to screen-prints of the Facebook page. Ms. South advised Murray about the January 1, 2009, addition to Rule 4:9 of the

Rules of the Supreme Court of Virginia, expressly governing e-discovery. H'rg Tr. May 27, 2010, at 197; Murray May 27, 2011, Ex. 22. Murray then decided to produce the requested screen-prints of Lester's Facebook page, and on May 11, 2009, he instructed Smith to obtain screen-prints of its contents to produce to the Defendants. H'rg Tr. May 27, 2010, at 197-99; Smith Dep. 44-46, Feb. 28, 2011.

At 1:34 p.m. that afternoon, Smith e-mailed Lester inquiring about the date he deactivated his Facebook account, and Lester replied, "The day before the questions were due [April 15, 2009.]" H'rg Tr. May 27, 2010, at 197-99; Murray May 27, 2010, Ex. 24.

At 2:11 p.m., Lester and Smith spoke by phone. Smith requested Lester to reactivate his Facebook account. Lester claims to have reactivated and deactivated his Facebook account confirming his capability to restore his Facebook page for the requested screen-printing. At 3:43 p.m., Lester telephoned Smith and informed her that he could reactivate his Facebook account. Smith Dep. 46-47, Feb. 28, 2011. Lester was at his place of employment and could not cooperate with the effort to screen-print his Facebook page until after his work day concluded. Smith Dep. 46-47, Feb. 28, 2011.

At the time he left the Allen Firm offices on the afternoon of May 11, Murray had been informed that the Lester Facebook page could be recovered. H'rg Tr. May 27, 2010, at 200-01; Murray May 27, 2011, Ex. 47.

On the evening of May 11, 2009, between 6:46 p.m. and 7:07 p.m., Smith spoke with Lester by phone from her home and accessed and screen printed Lester's Facebook page. Smith Dep. Ex. 15, Feb. 28, 2011. On the evening of May 11, in the 6:49 p.m. time frame, Lester deleted sixteen photos from his Facebook page, an act consistent with the earlier directive from Murray to "clean up" his Facebook account. H'rg Tr. Nov. 22, 2010, at 125-26, 128, 161; Smith Dep. Ex. 15, Feb. 28, 2011.

Smith maintains that she did not know Lester had deleted the 16 photos at the time she printed the contents of Lester's Facebook page on May 11, 2009. Smith Dep. 96-98, Feb. 28, 2011; H'rg Tr. May 27, 2011, at 259-60.

On May 12, 2009, Lester e-mailed Smith inquiring if she "got everything [she] needed" and expressing his desire to give defense counsel "all they wanted" to avoid any trial delay. Murray May 27, 2011, Ex. 26, 27. Murray e-mailed Smith on May 13, 2009, asking if she had gotten the Facebook screen-prints and if there was "[a]nything of interest?" Smith replied the screen-prints were in Murray's box and there was "[n]othing crazy." Murray May 27, 2011, Ex. 28.

When Murray returned to his office on May 14, he reviewed Plaintiff's First Supplemental Response to Defendants' Request for Production of Documents and "skimmed" the attached screen-prints including the numerous thumbnail-sized copies of photos. Murray then signed the response and served it on defense counsel prior to the hearing on May 14.

H'rg Tr. May 27, 2010, at 206-07; Murray May 27, 2011, Ex. 29. Murray insists that he did not know at the time he delivered this response to defense counsel on May 14, that Lester, on May 11, had deleted the sixteen photos. H'rg Tr. May 27, 2010, at 205.

At the hearing on May 14, 2009, the Court deferred ruling on the Motion to Compel Discovery pending Defendants' review of this response, received shortly before the hearing commenced. H'rg Tr. May 14, 2009, at 23-24.

On October 12, 2009, Murray served upon Defendants Plaintiff's First Supplemental Response to Defendants' Request for Production of Documents providing additional screen-prints of the Lester Facebook page. Murray May 27, 2011, Ex. 30. Lester, testifying under oath about his Facebook page at a deposition on December 16, 2009, stated that he had never deactivated or taken down his page. But Lester's e-mails and later testimony appear to show that he knew this statement was false. Lester Dep. 59:7-16, 61:2-7, 61:20-25, 62:13-64:11, 69:3-25, 70:12-17, 77:10-78:3, 83:10-25, 84:15-23, 104:18-24, Dec. 16, 2009. Lester persisted in denying the deactivation during his testimony at trial. Trial Tr. Dec. 8, 2010, at 542-46.

On March 1, 2010, Murray forwarded to counsel for Defendants Lester's Facebook IP logs sent to Murray by counsel for Facebook. Defs.' Mot. for Sanctions for Pl.'s Spoliation of Evidence, August 18, 2010, (hereinafter "Spoliation") at 8.

On August 3, 2010, counsel for Defendants hired Joshua Scotson, H'rg Tr. Nov. 22, 2010, at 44-45, and on August 18, 2010, Murray received the Scotson opinion that spoliation had transpired on May 11, 2009. Murray and McConnell engaged K. Gus Dimitrelos, an IT expert, to scrutinize the methodology of Scotson. Dimitrelos agreed with Scotson that Lester had deleted sixteen photos on the evening of May 11, 2009. Murray Dep. 28, Ex. 14, Feb. 28, 2011; H'rg Tr. May 27, 2010, at 208-09.

Based upon the opinion of Dimitrelos and the Scotson deposition, Murray and McConnell, by October 16, 2010, knew that expert opinion would confirm that Lester had deleted the photos on May 11, 2009. Malcolm McConnell, III, Dep. 17-18, Ex. 3, May. 5, 2011.

Lester testified in his deposition on November 17, 2010, that he alone, without input from anyone, made the decision to delete the photos from his Facebook page. Lester Dep. 48, Nov. 17, 2009.

## D. *Privilege Log Misrepresentations*

On September 28, 2010, Defendants served on Smith a subpoena *duces tecum* commanding the production of any and all e-mails between herself and Lester between March 25 and May 15, 2009. Claiming attorney-client privilege, Plaintiff's counsel moved to quash this subpoena, and, on October

19, 2010, Defendants filed a Motion to Require Compliance with Subpoena *Duces Tecum.*

On October 21, 2010, the Plaintiff's counsel agreed to the production of all e-mails between Smith and Lester referencing Facebook in response to the March 25, 2009, Request for Production of Documents unless subject to a claim of privilege, in which event, the e-mails would be produced for *in camera* inspection by the Court.

During the course of a hearing on November 17, 2010, the Court ordered Plaintiff to file a privilege log listing everything Plaintiff claimed was privileged and the basis for the claim. H'rg Tr. Nov. 17, 2010, at 39-40. On November 18, 2010, Murray, on behalf of Plaintiff, filed a spoliation privilege log with the Court. During the hearing on November 22, 2010, the Court declared the privilege log filed by Murray to be inadequate and ordered Plaintiff to file by Monday, November 28, 2010, an amended privilege log setting forth in detail why each document identified in the privilege log was protected by the claimed privilege and to deliver to the Court everything Plaintiff claimed to be privileged without redaction. H'rg Tr. Nov. 22, 2010, at 166-67.

On November 28, 2010, Murray filed with the Court the Enhanced Privilege Log and produced *in camera* the e-mails identified in the Enhanced Privilege Log. Murray intentionally omitted from the Privilege Log and the Enhanced Privilege Log the March 26, 2009, 9.54 a.m. e-mail from Smith to Lester and willfully failed to deliver it to the Court for *in camera* inspection. Murray concealed the e-mail from the Court out of fear that the Court would grant yet another continuance of the trial, scheduled to begin on December 7, 2010.

After the trial, Murray furnished the March 26, 2009, 9:54 a.m. e-mail to the Court on December 14, 2010. In his letter of transmittal, Murray falsely represented to the Court that the omission of this now notorious e-mail was caused by the mistake of a paralegal then employed by the Allen Firm, when, in fact, Murray knew his own misconduct caused the omission. Murray Dep. 23-29, 94-98, 101-04, Feb. 28, 2011; H'rg Tr. May 27, 2010, at 187.

E. *Redaction of Smith Cell Phone Records*

On November 10, 2010, M. Bryan Slaughter, Esq., counsel for Smith, produced Smith's personal cell phone records in response to a subpoena seeking documentation of phone calls between Smith and Lester in the time frame of Lester's deletion of Facebook photos. Smith Dep. 16-19, Feb. 28, 2011. After the production, Smith discovered that she had redacted a May 11, 2009, phone call with a number which, unknown to her when redactions were made, was Lester's cell phone number. On Friday, November 12, Smith notified McConnell of the error upon discovering it. Smith Dep. 60, Feb. 28, 2011.

On the afternoon of November 12, Murray, with Smith's assistance, prepared a draft e-mail disclosing the inadvertent redaction and sent it to McConnell, who was in the midst of communicating with defense counsel on other issues. Murray May 27, 2011, Ex. 39; Smith Dep. 66, Feb. 28, 2011.

Slaughter, upon learning of the inadvertent redaction, e-mailed to defense counsel on Tuesday, November 16, 2010, a copy of the phone records without the redaction. Murray May 27, 2011, Ex. 40.

There was no prejudice to the Defendants caused by this error.

## F. *Coe E-mail Redaction*

In December, 2010, Murray requested Thomas Coe, the Information Technology Director at the Allen Firm, to redact two portions of e-mail chains, telling Coe that they were not responsive and were protected by privilege, and the redactions were made. Coe Dep. 78-79; Murray Dep. 99-101, Feb. 28, 2011. No evidence established that the redactions made by Coe related to the Facebook spoliation controversy.

The only redaction clearly identified in documents produced by Coe and his counsel is a Lester e-mail of 9:09 a.m. April 7, 2009, in a chain of earlier e-mails. This redaction related to liability and bore no relationship to the Facebook spoliation controversy. Murray May 27, 2011, Ex. 45, Reinhardt 110519 Ltr. Attach 1-3.

## G. *Murray Letter Re Lexapro Usage*

At the request of Murray, a psychiatrist, John P. D. Shemo, M.D., agreed to examine Lester and review his records. Shemo Dep. 32, July 30, 2010. According to Dr. Shemo's July 7, 2009, examination notes, Lester told Dr. Shemo that he had taken the medication Lexapro in the summer of his freshman year in college. Shemo Dep. 163, July 30, 2010. In an effort to ascertain the source of the Lexapro, Murray spoke by telephone with Veronica C. Ballard, Lester's mother. Based upon the telephone conversation and the information imparted to him by Ms. Ballard, Murray authored and sent to counsel for Defendants a letter dated February 24, 2010, in which Murray stated:

> I have spoken to Isaiah's mother, Veronica Ballard, who has a recollection of these events. Ms. Ballard told me that Isaiah came home to Texas on a break and was in a bad mood because he had lost his track scholarship. Ms. Ballard mentioned this to her physician who gave her samples of Lexapro to try. Ms. Ballard recalls Isaiah took the pills for a few days and discontinued them because they made him feel poorly. Shortly

thereafter, he snapped out of what was bothering him and returned to Ohio University.

Pl.'s Opp. to Defs.' Second Mot. for Continuance, February 26, 2010, Ex. A.

On May 10, 2010, Ms. Ballard was deposed. In her deposition, Ms. Ballard testified that she knew that her son had indeed received some samples of Lexapro, tried them a short time, did not like the Lexapro, and then returned to school. She could not remember how he received the samples, but denied that she had told Murray that she provided the samples to her son. She did confirm the phone conversation with Murray in which she was "trying to brainstorm" the source of the Lexapro that she furnished. Veronica Ballard Dep. 33-37, 44-46

Defendants characterize Murray's February 24, 2010, letter as "false and misleading" because of its erroneous assertion that the documentation of Lexapro usage was derived from the records of Liza Gold, M.D., psychiatric expert retained by Defendants, instead of Dr. Shemo and the deposition testimony of Ms. Ballard denying that she was the source of the samples.

The discrepancy between the Murray letter of February 24, 2010, and the Ballard deposition testimony as to the source of the Lexapro was raised in the July 7, 2010, hearing regarding Defendants' Motion for Spoliation Remedy, at which time Murray accepted responsibility for the discrepancy, stating that it was based on a "misunderstanding."

Although troublesome, there is insufficient evidence to establish that Murray willfully made false statements or intended to mislead opposing counsel and the Court in the letter of February 24, 2010.

## H. *Allegation of Juror Misconduct*

On the morning of December 7, 2010, trial of these actions commenced, and potential jurors, including Amanda Hoy, were called and sworn. Trial Tr. Dec. 7, 2010, at 8-9.

During *voir dire*, the Court posed the following question to the prospective jurors, including Hoy, during their examination under oath:

> THE COURT: All right. Are any of you related by blood or marriage to any of the attorneys? Do you know them or have significant involvement with them or their law firms?

Hoy verbalized no response to the Court's question. *See* Trial Tr. Dec. 7, 2010, at 71.

The evidence does not establish that Hoy's failure to respond in the affirmative to the question was dishonest and a violation of her oath.

The evidence is insufficient to prove that Murray had any knowledge of improper conduct by Hoy. Murray has testified that he had never met or spoken with Hoy prior to December 7, 2010. H'rg Tr. May 27, 2010, at 217.

The only evidence of any contact between Murray and Hoy was the one e-mail exchange of May 12-13, 2010, initiated by Hoy, inquiring if Murray would be willing to serve on the Board of Meals on Wheels, Hoy's former employer. This invitation was not accepted by Murray.

There has been insufficient evidence to establish that Hoy, on the date of trial, had a "significant involvement" with the Allen Firm. The meaning of "significant involvement" is subjective and to be determined by an examination of the state of mind of Hoy. No evidence has been adduced as to Hoy's state of mind or how she interpreted the term "significant involvement" at the time of *voir dire*. Her employment with Meals on Wheels had terminated in May of 2010, approximately seven months prior to the trial of this action. Grzegorczyk Dep. 14; Emily Krause Dep. 58, May 20, 2011.

Hoy could have honestly considered her involvement through Meals on Wheels with the Allen Firm to be insignificant at the time of trial.

## I. *Murray's Behavior at Trial*

Murray's conduct at trial included a number of actions designed to inflame the passions and play upon the sympathy of the jury. These actions include the following:

a. Weeping during opening statement and closing argument;

b. Stating on two occasions to the jury, in one form or another, that defendant David Sprouse, the driver of the truck, "killed" the plaintiff; Trial Tr. Dec. 7, 2010, Dec. 9, 2010, 875:14-15;

c. Violating a pre-trial ruling from this Court by exclaiming in the jury's presence that the Defendants had asserted that Lester was contributorily negligent in causing his wife's death; Trial Tr. Dec 7, 2010, Dec, 8, 2010, 403:22-405:20;

d. Repeatedly invoking the name of God or religion by referring to the Plaintiff as one who attends church with his parents and by four times mentioning prayer. Trial Tr. Dec 7, 2010, Dec. 9, 2010, 889:5-14, 889:9-10.

Significantly, with the exception of (c), above, at no time did defense counsel object to any of the above-described behavior.

Defense counsel moved for a mistrial after Murray blurted out to the jury that Defendants had accused Lester of having been guilty of "contributory negligence." The Court overruled the motion contemporaneously and declines to revisit the issue post trial except as relates to remittitur, discussed below.

## III. *Conclusions of Law*

### A. *Motion for Monetary Sanctions against Matthew B. Murray*

Defendants, as the moving parties in seeking sanctions, bear the burden of proving by a preponderance of the evidence facts establishing misconduct warranting an award of sanctions. *See United Dentists, Inc. v. Commonwealth*, 162 Va. 347, 358 (1934) (party has the burden of proof who seeks to move the court to act in his favor).

When Murray was served with Defendants' Fourth Interrogatory and Request for Production of Documents to Plaintiff, he had a duty to produce the documents and electronically stored information described in Request No. 10 which were in the possession, custody, or control of Plaintiff, absent timely assertion of a well-founded objection. Va. Sup. Ct. R. 4:9.

Murray's signature on Plaintiff's Answer to Defendants' Fourth Interrogatory and Responses to Request for Production of Documents constituted a certification that he had read the pleading and that to the best of his knowledge, information, and belief, formed after a reasonable inquiry the answer was (1) consistent with Part IV of Rules of the Supreme Court of Virginia and warranted by existing law or a good faith argument for extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation. Va. Sup. Ct. R. 4:1(g).

Murray, when he signed and served upon Defendants Plaintiff's Answer to Defendants' Fourth Interrogatory and Responses to Request for Production of Documents, violated Va. Sup. Ct. R. 4:1(g) by stating in response to Request No. 10 that Lester did "not have a Facebook page on the date this is signed, April 15, 2009." If Murray had, after a reasonable inquiry, believed Request No. 10 was objectionable, consistent with Part IV Rules of the Supreme Court of Virginia and warranted by existing law or a good faith argument for extension, modification, or reversal of existing law, he could have legitimately served an objection to Request No. 10. Murray, however, chose to obstruct production of the requested screen-prints by drafting a deceptive response to Request No. 10 and then instructing his client to take down his Facebook page.

If a pleading, motion, or other paper is signed or made in violation of this rule, the Court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee. Va. Sup. Ct. R. 4:1(g).

The Court will impose upon Murray, as an appropriate sanction, the reasonable expenses, including a reasonable attorney's fee, incurred by Defendants because of Murray's violation of Va. Sup. Ct. R. 4:1(g), which would include but not be limited to, the expense of communicating with Murray seeking voluntary production of the requested screen-prints without the necessity of filing a motion to compel production, the preparation and filing of Motion to Compel Discovery, and preparation for the May 14, 2009, hearing on Motion to Compel Discovery, including the costs of retaining and deposing witnesses, expert witness fees.

Rule 3.4(a) of the Virginia Rules of Professional Conduct mandates that a lawyer shall not counsel or assist his client to alter, destroy, or conceal a document or other material having potential evidentiary value for the purpose of obstructing a party's access to evidence. The apparent violation of this Rule will be referred to the Virginia State Bar for any action it deems appropriate.

Both Lester and Murray must be held accountable for the spoliation. Lester did what Murray told him to do, deliberately delete Facebook photos that were responsive to a pending discovery request. Defendants are entitled to sanctions against Murray and Lester for the spoliation that occurred on May 11, 2009, as previously ordered.

Murray violated Va. Code § 8.01-271.1, Va. Sup. Ct. R. 4:1(g), and Va. Sup. Ct. R. 4:12 by omitting Smith's March 26, 2009, 9:54 a.m. e-mail from the Privilege Log and Enhanced Privilege Log submitted to the Court and by his failure to submit the subject e-mail to the Court for *in camera* inspection. Murray concedes by counsel that his behavior also violated Rules 3.3 and 3.4 of the Virginia Rules of Professional Conduct. The Court will refer this issue to the Virginia Bar.

Murray violated Va. Code § 8.01-271.1 by falsely representing to the Court in his letter of December 14, 2010, that a mistake of a paralegal and not his own misconduct caused the subject omission from the privilege logs. Murray concedes by counsel that his behavior also violated Rules 3.3 and 3.4 of the Virginia Rules of Professional Conduct. The Court will refer this issue to the Virginia Bar.

The Court imposes upon Murray, as an appropriate sanction, the reasonable expenses, including a reasonable attorney's fee, incurred by Defendants because of Murray's violations of Va. Code § 8.01-271.1, Va. Sup. Ct. R. 4:1(g), and Va. Sup. Ct. R. 4:12 arising out his above described misconduct relating to the privilege logs.

### IV. *Motion for Monetary Sanctions against Isaiah Lester*

Defendants, as the moving parties in seeking sanctions, bear the burden of proving by a preponderance of the evidence facts establishing misconduct by Lester that warrant an award of sanctions. *See United Dentists,* 162 Va.

at 358 (party has the burden of proof who seeks to move the court to act in his favor).

Lester's misconduct, established by a preponderance of evidence, includes the following:

a. Deactivating his Facebook account and claiming he did not have one in a misleading response to Defendants' discovery request;

b. Deleting Facebook photos on May 11, 2010, prior to the production printed later that day by his counsel;

c. Misrepresenting in deposition that he was currently volunteering for the Boys and Girls Club;

d. Misrepresenting in deposition that he never deactivated or deleted his Facebook page;

e. Claiming on the stand at trial that he never deleted Facebook photos despite previously admitting to the same.

The foregoing actions, with the exception of (e) above, were known to the Court and Defendants prior to trial. His actions relating to spoliation have been addressed by a previous order. They related solely to the issue of damages and were mitigated, to the extent appropriate, by an adverse jury instruction; thus, they do not affect the validity of the verdict as to liability.

The Court will refer the allegations of perjury to the Commonwealth's Attorney for the City of Charlottesville for his review and consideration for any action he deems appropriate.

### V. *Motion for Sanctions for Plaintiff Counsel's Improper Disclosure of Confidential Mediation Discussions*

Defendants have alleged that Murray improperly disclosed details of mediation to the media following trial, but, since no evidence has been produced in the support of the motion, it appears to have been abandoned and, accordingly, will be dismissed.

### VI. *Remittitur*

This Court is empowered to set aside or remit a jury verdict that is excessive or is the product of passion, bias, sympathy, or prejudice. *See* Va. Code §§ 8.01-383, 8.01-383.1; *Baldwin v. McConnell*, 273 Va. 650, 655, 643 S.E.2d 703, 705 (2007) ("Setting aside a verdict as excessive . . . is an exercise of the inherent discretion of the trial court. . . ." (quoting *Shepard v. Capitol Foundry of Va., Inc.*, 262 Va. 715, 721, 554 S.E.2d 72, 75 (2001))). The evidence, however, must be considered in the light most favorable to the prevailing plaintiff, and the court must determine whether the amount of recovery bears a reasonable relation to the damages proven by the evidence. *Shepard*, 262 Va. at 721, 554 S.E.2d at 75.

324

A court should award remittitur when a "verdict is so excessive as to shock the conscience of the court and to create the impression that the jury has been influenced by passion, corruption, or prejudice." *Condominium Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 580, 709 S.E.2d 163, 175 (2011) (quoting *Smithey v. Sinclair Refining Co.*, 203 Va. 142, 146, 122 S.E.2d 872, 875 (1961)). Similarly, it is the duty of the judge to correct any injustice that results from an "award . . . so out of proportion to the injuries suffered to suggest that it is not the product of a fair and impartial decision. . . ." *Smithey*, 203 Va. at 146, 122 S.E.2d at 876.

After considering all of the evidence in the light most favorable to the Plaintiff, this Court finds that the jury's award of $6,227,000 to Lester as the beneficiary of his wife's estate was grossly disproportionate to the $1,000,000 given to the decedent's parents.

When compared to the award given to the decedent's parents, both of whom had a loving and long-lasting relationship with their daughter, it is clear that the award granted to Lester bears no reasonable relation to the damages proven by the evidence and that the award is so disproportionate to the injuries suffered that it is likely the product of an unfair and biased decision. The disproportionality of Lester's award is further highlighted when seen in light of the fact that Lester had been married less than two years before his wife's death, Trial Tr. Dec. 8, 2010, at 484:25, and that his behavior in the tragic aftermath was characterized by extensive social activities and travelling, both in the United States and overseas. *See* Trial Tr. Dec. 8, 2010, at 541-75.

After considering the evidence in the light most favorable to the Plaintiff, this Court also finds that the amount of the verdict in this case is so excessive on its face as to suggest that it was motivated by bias, sympathy, passion, or prejudice, rather than by a fair and objective consideration of the evidence.

Contributing substantially to the jury's excessive verdict was Murray's actions geared toward inflaming the jury. As witnessed by the Court and detailed above, Murray injected passion and prejudice into the trial, shouting objections and breaking into tears when addressing the jury. Most of Murray's actions in this respect were suffered without objections from defense counsel, who focused their defense upon the denial of liability (despite Defendant Sprouse's admission to having pleaded guilty to manslaughter in connection with the accident, Trial Tr. Dec. 9, 2010, at 642:12) and upon aggressive, but obviously ineffectual, attacks upon Lester's credibility and character. This defense strategy produced the extreme opposite of its desired effect, serving to create additional passion and sympathy for Lester and anger towards the Defendants.

Given the foregoing, finding the award given to Lester as the beneficiary of his wife's estate so grossly disproportionate to the injuries actually suffered that it suggests that the award was not the product of a fair and

impartial decision and so excessive so as to shock the conscience of the Court and create the impression that the award was influenced by passion or prejudice, the Court will remit $4,127,000 of the $6,227,000 awarded to Lester as beneficiary, leaving him with an award of $2,100,000, adjusted for interest.

Since Lester suffered economic loss not sustained by Jessica Lester's parents, an award of $2,100,000 as beneficiary, clearly larger than that of each parent, is justified by the evidence. Lester's economic loss properly accounts for this differential and bears "a reasonable relation to the damages disclosed by the evidence." *Shepard*, 262 Va. at 721, 554 S.E.2d at 75.

Despite the acts of spoliation, combined with an adverse presumption instruction, and in the face aggressive challenges to Lester's character and credibility, the evidence was more than sufficient to establish that Lester suffered substantial personal loss from the accident, apart from the loss of his wife, and demonstrated at trial that he suffered personal injuries, both physical and mental; thus, he was properly compensated for these injuries by the jury with an award of $2,350,000. This award will stand without modification.

Defendants argue that Isaiah Lester may have been twice compensated for his mental anguish. Defendants had every opportunity to make such arguments and take precautions against such misunderstandings during the Court's deliberations over jury instructions. The Court will not revisit the instructions on this basis.

The award of $1,000,000 to the parents of Jessica Lester, Gary C. Scott and Jeannie Scott, was fair and clearly supported by the evidence. This award should not be disturbed.

Defendants additionally lament in their brief that this Court should consider the alleged unfairness of allowing beneficiaries Gary C. Scott and Jeannie Scott to have their own representation at trial and that said representation injected improper considerations into the proceedings. This argument was addressed prior to trial and found to be without merit. It will not be reconsidered here.

## VII. *Motion for Mistrial for Newly Discovered Juror Bias*

Hoy, while being examined under oath pursuant to Va. Code § 8.01-358, had a duty to not willfully swear falsely in her responses to questions posed to her by the Court and counsel during *voir dire*. Va. Code § 18.2-434. The evidence is insufficient to establish that Hoy swore falsely by her silence in response to questioning by the Court.

## VIII. *Order*

Consequently, the Court orders the following:

1. As set forth above, Defendant's Motion for Monetary Sanctions against Matthew B. Murray, is hereby granted;

2. Defendant's Motion for Monetary Sanctions against Isaiah Lester for his role in the spoliation of evidence is granted;

3. Defendant's Motion for Mistrial for Newly Discovered Juror Bias is denied;

4. The Court further orders the remittance of $4,127,000 by Isaiah Lester of the amount awarded to him as a beneficiary of Jessica Lynn Scott Lester, leaving the Defendants to pay Lester a total of $4,450,000, adjusted for interest as determined at trial. The jury's verdict shall remain undisturbed in all other respects.

5. This Court will hear argument on September 23, 2011, to determine the amount of the sanctions to be levied against Lester and Murray, as well as to the liability of the Allen Firm for the actions of Murray.

6. The Court will refer allegations that Murray violated the Code of Professional Responsibility in multiple respects to the Virginia State Bar and matters relating to allegations of perjury on the part of Lester to the Commonwealth's Attorney for the City of Charlottesville.

Endorsements are dispensed with pursuant to Rule 1:13 of the Supreme Court of Virginia. The Clerk is directed to mail a true copy of this Order to counsel of record, James M. McCauley, Esq., Ethics Counsel, Virginia State Bar, and to Warner D. Chapman, Esq., Commonwealth's Attorney for the City of Charlottesville. And this cause is continued for further action as set forth above.

October 21, 2011

### *Final Order*

On the 23rd day of September 2011, came the parties, Isaiah Lester, Administrator of the Estate of Jessica Lynn Scott Lester, by his Counsel, Malcolm P. McConnell, III, Esq., and Defendants Allied Concrete Company and William Donald Sprouse, by their counsel, Benjamin G. Chew, Esq., Rory E. Adams, Esq., John W. Zunka, Esq., and Richard H. Milnor, Esq., and came the beneficiaries, Gary C. Scott and Jeannine Scott, by their counsel, Joseph A. Sanzone, Esq., plus Matthew B. Murray by his counsel, Thomas Williamson, Esq., and Marlina Smith by her counsel, M. Bryan Slaughter, Esq., and Malcolm P. McConnell, Esq., by his counsel, Robert T. Hall, Esq., as well as Allen, Allen, Allen, and Allen, by its counsel, Hugh M. Fain, III, Esq., for an evidentiary hearing pursuant to the Court's Order dated September 1, 2001, granting Defendants' post-trial motions for sanctions

against Murray and Lester wherein the Court, in addition to hearing arguments of counsel, received testimony of expert witnesses, received memoranda from Defendants, Murray, Lester, and Allen, Allen, Allen, and Allen, and received evidence of billing records reflecting attorneys' fees and expenses incurred by Defendants relating to the spoliation of evidence and other misconduct identified in the aforementioned Order of September 6, 2011; and

Whereas, the Court has subsequently reviewed Defendants' Supplemental and Revised January 18, 2011, Memoranda of Costs and Fees Incurred Related to Motion for Sanctions for Plaintiff's Spoliation of Evidence filed on September 22, 2011, detailing fees and expenses and has also received and reviewed Objections of Matthew B. Murray, Esq., to Defendants' Supplemental and Revised January 18, 2011, Memoranda of Costs and Fees, accompanied by analysis and critique by G. A. "Chip" Kalbaugh, Esq., directed to Thomas W. Williamson, Jr., Esq., dated September 30, 2011; and

Whereas, the Court has carefully considered all of the arguments of Murray and Lester that the fees and expenses sought are excessive, including, but not limited to, contentions that all but a portion of the fees sought were neither reasonable, necessary, nor caused by the sanctioned conduct, that fees sought were in contravention of litigation billing guidelines of the insurance companies, involved too many attorneys and staff, that hourly rates of all attorneys and staff were excessive, that retention of Mr. Roche, plus all local counsel was unnecessary, and that the litigation with Facebook in California was unnecessary, unduly expensive, and time-consuming; and

Whereas, the Court, having reviewed the evidence and arguments of counsel and carefully considered the extensive pattern of deceptive and obstructionist conduct of Murray and Lester resulting in the sanction award, finds that most of the substantial fees and costs expended by Defendants were necessary and appropriate to address and defend against such conduct, with the actions required by Defendants having been accurately summarized under the heading entitled "Timeline of Spoliation Events" set forth on pages 3-6 of Defendants' Rebuttal to Matthew B. Murray's and Plaintiffs' Objections to Defendants' Memorandum of Costs and Fees; and

Whereas, after considering the objections of Murray and Lester as set forth above and after rendering deductions where the Court determined such objections to be well-founded, the Court, having considered the time and effort expended by the attorneys, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate in light of the Court's Order of September 6, 2011, see, e.g., *West Square, L.L.C. v. Communication Techs.*, 274 Va. 425 (2007), finds as follows:

328

1. The total of fees and expenses found to be payable to Defendants is $722,000, with the sum of $625,110 due Patton Boggs, L.L.P., and the sum of $96,890 due Zunka, Milnor, & Carter, Ltd.;

2. Of the grand total set forth above, Murray is obligated for, and is hereby ordered to remit to Defendants, the sum of $542,000; and

3. Of the grand total set forth above, Lester is obligated for, and hereby ordered to remit to Defendants, the sum of $180,000; and

There being nothing further remaining for resolution in this case, it is hereby dismissed from the docket of this Court. The Clerk is directed to mail true copies of the foregoing Final Order to all counsel of record. Endorsements are dispensed with pursuant to Rule 1:13 of the Rules of the Supreme Court of Virginia.